William P. HAMMILL, Adm'r,
Plaintiff,

v.

OLYMPIC AIRWAYS, S.A., Defendant.

C. A. No. 74–567.

United States District Court,
District of Columbia.

June 27, 1975.

Richard H. Jones, Washington, D. C., for plaintiff.

William R. Joyce, Jr., Washington, D. C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

This case is before the Court on defendant's motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted. The action arises out of the death of a Virginia resident on a flight between Corfu and Athens, Greece. Plaintiff herein is the administrator of the decedent's estate, and the defendant is the Greek airline which scheduled the ill-fated flight.

For reasons which follow, the Court finds that plaintiff has properly alleged a common law cause of action for wrongful death based upon general maritime principles, and that the Court has jurisdiction over such claim under 28 U. S.C. § 1333. This cause of action was established by the Supreme Court's decision in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L. Ed.2d 339 (1970), and extended by *Sea-Land Services, Inc.* v. *Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). Since this cause of action is broader than any specific federal or state statutory right of recovery for wrongful death, and since such statutes are to be merely a guide in determining the scope of the common law remedy (*Gaudet, supra* at 575–76, 94 S.Ct. at 810), the Court finds it unnecessary to reach the question of whether plaintiff has alleged a cause of action under the Death on the High Seas Act, 46 U.S.C.A. §§ 761 *et seq.*, (hereinafter, "DHSA").

### II. FACTUAL BACKGROUND AND CLAIMS OF THE PARTIES.

The deceased, Caroline Hammill Cagle, was a United States citizen and a resident of Virginia. During the fall of 1972, she purchased a round-trip air ticket in the United States from an air carrier other than the defendant for travel from the United States to several places in Europe. While in Europe, she made a side trip to the Greek island of Corfu, located in the Mediterranean Sea; this excursion was not on the ticket purchased in the United States. While in Corfu, Ms. Cagle purchased from defendant's ticket office a one-way ticket on a non-stop flight to Athens, Greece. On its approach to the Athens

airport, the airplane crashed in the water at Voula Bay, within one mile of land, on October 21, 1972, resulting in Ms. Cagle's death.

For purposes of determing whether this Court has jurisdiction over this matter, the parties have stipulated to the above facts. Additionally, the parties stipulate that the defendant maintains a ticket office in the District of Columbia, and that if the plane's pilot was negligent, such negligence occurred somewhere over the Mediterranean Sea, and over international waters.

On July 2, 1974, the duly-appointed administrator of the decedent's estate, William R. Hammill, also a resident of Virginia, filed an amended complaint seeking damages for wrongful death, for conscious pain and suffering, for loss of support on behalf of decedent's niece and two nephews, and for punitive damages. Plaintiff's first theory of recovery is a general common law cause of action for wrongful death, which is brought under 28 U.S.C. § 1332. His second theory is an action for wrongful death based on the "Agreement Relating to Liability Limitations of the Warsaw Convention and The Hague Protocol", on CAB Order No. E–23680 (the "Montreal Agreement"), and on obligations undertaken by defendant pursuant to the Tariff and Agreement (CAB No. 16712 and Order No. E–24571) which was approved by the Civil Aeronautics Board on December 28, 1966, and was in full force and effect at the time of the crash. His third theory of recovery is an action for wrongful death based on the general common law theory of absolute liability. His fourth theory is an action for wrongful death which is founded upon the Death on the High Seas Act, 46 U. S.C. §§ 761 et seq., and on general maritime law, 28 U.S.C. § 1333. Finally, plaintiff seeks punitive damages for the willful misconduct of defendant's pilot which allegedly resulted in the crash.

In moving to dismiss the amended complaint for lack of jurisdiction and for failure to state a claim defendant claims that this Court must apply Greek law. Defendant argues that this Court must follow District of Columbia law with respect to the choice-of-law question, and that in this respect the District of Columbia has rejected the traditional *lex loci* approach in favor of the application of the law of the state with the predominant interest in the issue. *Richards* v. *United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Myers* v. *Gaither*, 232 A.2d 577 (D.C.App. 1967); *Tramontana* v. *S. A. Empresa De Viacao Aerea Rio Grandense, t/a Varig Airlines*, 121 U.S.App.D.C. 338, 350 F.2d 468 (1965); *cert. denied sub nom., Tramontana* v. *Varig Airlines*, 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966); *Restatement (Second) of Conflicts of Laws*, § 145 (1971). Accordingly, defendant argues that Greece is the state with the "predominant interest" or "most significant relationship" to the case, since Greek contacts with the incident are superior to those of the District of Columbia. That is, Greece is (1) the place where injury occurred, (2) the place where the relationship between the parties arose and was centered (through the purchase of the ticket), and (3) the domicile, place of incorporation, and principal place of business of the corporate defendant.

Defendant claims that the application of Greek law would preclude this Court's jurisdiction over this case. Defendant avers, through an affidavit by a Greek attorney who specializes in airplane tort claims, that Greek law has adopted [1] and would apply the Warsaw Convention to airplane accident claims arising from Greek domestic flights. Defendant claims that Article 28(1) of the Warsaw Convention, 49 Stat. 3020, does not permit plaintiff to bring this action before this Court, since this Court is not

1. Article 35 of Greek Law 5017/31.

among the forums available to plaintiff under that section, nor does it sit in the territory of a "High Contracting Party" within which any of those forums is located. Thus, defendant moves to dismiss for lack of jurisdiction.

Since the District of Columbia would apply Greek laws, defendant urges that plaintiff must adequately plead and ultimately prove Greek law in order to sustain an action for wrongful death. Plaintiff's complaint does not plead Greek law. Therefore, defendant moves to dismiss for failure to state a claim.

Finally, defendant argues that plaintiff does not have a cause of action either under general maritime law or under the Death on the High Seas Act. Defendant submits that the mere assertion that the airplane "crashed into the Mediterranean Sea" is insufficient to constitute a maritime tort such as would confer admiralty jurisdiction upon the Court. Defendant relies on the rule in *Executive Jet Aviation Co., Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), that "maritime locality alone is not a sufficient predicate for admiralty jurisdiction in aviation tort cases," and that in the absence of legislation to the contrary, claims arising from airplane accidents are not cognizable in admiralty unless "the wrong bear a significant relationship to traditional maritime activity." *Executive Jet, supra* at 268, 93 S.Ct. at 504. Further, defendant argues that plaintiff's claim under the Death on the High Seas Act fails because the claim is governed by Section 4 of the Act, 46 U.S.C. § 764, which requires that:

"[w]henever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States . . . ."

Defendant urges that since Greek law grants such a right of action for wrongful death, Section 4 governs the case and, therefore, plaintiff must plead and prove Greek law, which he has failed to do.

## III. DISCUSSION

A. *A cause of action for wrongful death resulting from the crash of the airliner is within the Court's admiralty jurisdiction under 28 U.S.C. § 1333.*

■■ It should be noted at the outset that, despite the stipulation of the parties that "[I]f the plane's pilot was negligent, such negligence occurred somewhere over the Mediterranean Sea, and over international waters,"[2] this set of facts is probably insufficient to satisfy the current requirements for establishing this Court's admiralty jurisdiction. Aside from the objection that subject matter jurisdiction cannot be conferred by stipulation of the parties, the Court also notes the admonition of the Supreme Court in *Executive Jet, supra*, that the maritime locality of an airplane crash cannot by itself serve to classify the action as a maritime claim, and thereby confer admiralty jurisdiction.

In *Executive Jet*, the Supreme Court noted with approval the extension of admiralty jurisdiction to actions for wrongful death, arising out of airplane crashes into the high seas beyond one marine league from shore, which have been brought under the Death on the High Seas Act.[3] The Supreme Court

2. Stipulation of Facts for Purpose of Determining Jurisdiction, at 3. The parties may be proceeding under the assumption that this formulation of the facts is necessary to bring the suit under the DHSA. But, as stated in *Wilson v. Transocean Lines*, 121 F. Supp. 85 (N.D.Cal.1954):

"In applying the 'locality' test for admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action." 121 F. Supp. at 92.

3. *Choy v. Pan American Airways Co.*, 1941 A.M.C. 483 (S.D.N.Y.) and progeny; see *Executive Jet, supra* note 13.

made it clear, however, that it was not deciding "whether an aviation tort can ever, under any circumstances bear a sufficient relationship to traditional maritime activity to come within admiralty jurisdiction in the absence of legislation." 409 U.S. at 271, 93 S.Ct. at 505. Since this Court does not now decide whether the Death on the High Seas Act applies to the specific facts of this case for reasons explained at page 834 below, the issue left open by the Supreme Court in *Executive Jet* is thus squarely before this Court.

*Executive Jet* represents an effort by the Supreme Court to limit the extension of admiralty jurisdiction to such airplane tort cases as those arising out of accidents occurring on or over navigable waters within state territorial limits, when such aircraft are not, for example, on transoceanic flights. Prior to *Executive Jet,* this extension of admiralty jurisdiction by federal courts resulted from an increasing use of a "strict locality" test (i. e. whether the actual crash had occurred in a maritime locality) to determine whether admiralty jurisdiction would attach.

The Supreme Court noted that federal courts had been persuaded in aviation cases to extend their admiralty jurisdiction beyond the statutory coverage of the Death on the High Seas Act to air crashes involving personal injury (in contrast to death) which occurred on the high seas more than one league offshore. The courts extended their admiralty jurisdiction on the basis of the tort's strictly maritime locality, despite the fact that neither the DHSA nor any other federal statute provided a remedy. However, the Supreme Court also noted that these cases, as well as most other cases brought under the DHSA, involved torts (1) which were within a maritime locality ·(i. e. the alleged negligence became operative while the aircraft was on

or over navigable waters) and (2) which had some relationship to maritime commerce (at least insofar as the aircraft was beyond state territorial waters and performing a function—transoceanic crossing—that previously would have been performed by waterborne vessels). *Executive Jet, supra* at 264, 93 S.Ct. at 502.

The Supreme Court, therefore, set forth the following test to determine whether maritime jurisdiction should attach to "aeronautical torts":

> "[T]he mere fact that the alleged wrong 'occurs' or 'is located' on or over navigable waters—whatever that means in an aviation context—is not of itself sufficient to turn an airplane negligence case into a 'maritime tort.' It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity. We hold that unless such a relationship exists, claims arising from airplane accidents are not cognizable in admiralty in the absence of legislation to the contrary."

*Executive Jet, supra* at 268, 93 S.Ct. at 504.

However, the court left open the question of precisely what constitutes a "significant relationship to traditional maritime activity" in the context of air commerce. In fact, as noted above, the Court did not even decide whether an aviation tort can *ever* bear this "significant relationship" in the absence of legislation.[4]

The aircraft in *Executive Jet* was flying over land between points within the continental United States and happened to crash into Lake Erie while taking off from Cleveland. As the Court could find "no significant relationship between such an event befalling a land-based plane flying from one point in the continental United States to another,

---

4. Note, however, the Supreme Court's implicit approval of aviation personal injury suits, p. 832, *supra*, which courts have deemed to be within admiralty jurisdiction, despite the fact that no such right of action is given by the DHSA or by any other statute. *Executive Jet, supra* at 264, 93 S.Ct. at 502.

and traditional maritime activity involving navigation and commerce on navigable waters"[5] it did not have to reach the question of the circumstances wherein such a relationship might indeed exist.

This Court, in contrast, must make exactly such a determination. The language of the Supreme Court in *Executive Jet* is helpful in deciding this issue, although it cannot be—as the Supreme Court itself states—dispositive:

> "It could be argued, for instance, that if a plane flying from New York to London crashed in the mid-Atlantic, there would be admiralty jurisdiction over resulting tort claims even absent a specific statute. An aircraft in that situation might be thought to bear a significant relationship to traditional maritime activity because it would be performing a function traditionally performed by waterborne vessels. Moreover, other factors might come into play in the area of international air commerce—choice-of-forum problems, choice of law problems, international law problems, problems involving multi-nation conventions and treaties, and so on." *Executive Jet, supra* at 271–72, 93 S.Ct. at 506.

The defendant's jetliner in the instant case was engaged in what may be viewed as a Greek domestic flight, although the flight occurred almost entirely over international waters. Even so, this consideration has little relevance to the question of whether an action for the wrongful death of an American citizen resulting from the crash of such an aircraft can be said to be within the maritime jurisdiction of a United States federal court.

What is central to this question, under *Executive Jet,* is not the situs of the crash, but rather the nature of the flight itself. The airplane was on a flight across the Mediterranean Sea, from Corfu to Athens, and was serving a function that had traditionally been carried on by surface-going maritime vessels. It can therefore be said, and this Court so finds, that the "wrong" which befell plaintiff's decedent occurred as a result of an activity which bore a significant relationship to traditional maritime activity. That the actual crash happened to occur in Greek domestic waters, as opposed to the high seas or international waters, does not alter the fact that the rules of admiralty are uniquely appropriate[6] for adjudicating what is in essence a maritime claim.[7] The action is therefore subject to federal maritime jurisdiction and is cognizable under 28 U.S.C. § 1333 in a federal district court.

B. *Plaintiff has sufficiently pleaded a common law cause of recovery for wrongful death of his decedent under general maritime law.*

The Court finds that there now exists a federal common law remedy for wrongful death founded on general principles of maritime law. This right was set forth by a unanimous Supreme Court in its *Moragne* decision,[8] and was extended in several important respects by *Sea-Land Services, Inc.* v. *Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), which sought to define more precisely the scope of the *Moragne* remedy.

Until the *Moragne* decision, all recoveries for wrongful death had been based

---

5. *Executive Jet, supra,* at 272, 93 S.Ct. at 506.

6. The uniform applicability of the rules of admiralty in various jurisdictions is the foundation of their usefulness. Without this uniform applicability, a litigant would be confronted with choice-of-forum, choice-of-law, and other problems mentioned in *Executive Jet, supra,* at 272, 93 S.Ct. at 506. Additionally, admiralty employs the more flexible doctrine of laches, in contrast to the more

common statutes of limitation under rules of civil procedure.

7. *Accord, Hark* v. *Antilles Airboats, Inc.,* 355 F.Supp. 683 (D.V.I.1973) ; *Higgenbotham* v. *Mobil Oil Corp.,* 357 F.Supp. 1164 (W.D. La.1973). *Contra,* Case Note: *Hark* v. *Antilles Airboats, Inc.,* 40 Journal of Air Law and Commerce 575 (1974).

8. *Moragne* v. *States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

on statute.[9] In *Moragne,* the Supreme Court found that the clear meaning of the numerous federal and state wrongful death statutes is that there exists a general right to recover for wrongful death, both under maritime law and, by implication, under civil law as well. See p. 836, *infra.* The Supreme Court held that the existence of the often complex and overlapping network of state and federal statutes, civil and maritime, and the availability of certain remedies under some statutes while not under others, did not mean that a particular statute was intended to have the effect of foreclosing any nonstatutory federal remedies that might be found to effectuate the policies of general maritime law. Moreover, the Court found that existing statutes were not intended to preclude the availability of a remedy for wrongful death under general maritime law in situations *not* covered by these Acts. *Moragne, supra,* 398 U.S. at 400, 402, 90 S.Ct. at 1787, 1788, 26 L.Ed.2d 339.

The Supreme Court in *Moragne* specifically referred to the Death on the High Seas Act, which, under the circumstances of that case, was unavailable as a remedy for a wrongful death claim in arising out of an accident which occurred in the territorial waters of a state whose statute did not afford as adequate relief as was available under the DHSA. The Court therefore found that recovery could be effected under general maritime law, by use of—but not bound by—the kinds of remedies available under the DHSA as a guide for fashioning relief in a particular situation.

*Gaudet* is even more specific as to the scope of the relief that is available under the *Moragne* common law remedy. *Gaudet* held that a decedent's dependents may recover damages for loss of support, services, society, as well as dam-

ages for funeral expenses. *Gaudet, supra* at 583–91, 94 S.Ct. at 814–18. Such items were not previously allowable under, for example, the DHSA, which permitted recovery only for loss of support; *Gaudet* indicates that the new common-law remedy announced in *Moragne* is not bound by such limitations.

█ The applicability of the DHSA, and particularly Sections 761 and 764, has been a significant point of contention in this litigation. However, in light of the new, more expansive common law maritime remedy now available under *Moragne* and *Gaudet,* this issue is considerably less important than originally thought. Once a federal court determines that it has maritime jurisdiction over a wrongful death action, the broader forms of relief under the federal common law remedy become available. These operate, in effect, to supercede whatever statutory remedies might also be available. As Professor Gilmore points out,[10]

"[*Gaudet*] took an expansive view of the Moragne wrongful death remedy and seems to have held that the new remedy is not to be limited either by statutory provisions, state or federal, or by the case law, state or federal, construing such statutory provisions. . . . [*Gaudet*] . . . amply confirms . . . that the Moragne case had 'reduced both DHSA and the FELA [Federal Employees Liability Act] death provisions incorporated in the Jones Act to the level of nonstatutory Restatements.' Under Gaudet, indeed, all the state statutes seem to have joined the federal statutes on the scrap heap. The maritime law death remedy, as explicated in Gaudet, is now more comprehensive and provides for a greater recovery than had previously been available under the feder-

---

9. *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886).

10. Gilmore, *The Law of Admiralty,* § 6–33, pp. 369–70.

al death statutes or under most state death statutes.[11] "

It thus appears that the question of the applicability of the DHSA is no longer of central importance to the issues in this case and, consequently, does not present a question for decision by this Court. However, were this Court to make a determination about the applicability of the DHSA, the practical consequences for the parties would be the same either way the Court decided. If the Act were found to be applicable, then the remedy which would be framed could still be broader—under *Moragne* and *Gaudet*—than the Act would otherwise afford.[12] If inapplicable, then the *Moragne* remedy clearly would be available, since its initial purpose was to provide relief in precisely those situations wherein no statutory remedy for wrongful death was available.[13]

A further consideration is worthy of mention. Both parties appear to have assumed that a maritime claim such as that alleged herein, would be cognizable exclusively within the admiralty jurisdiction of a federal court. Indeed, there is ample authority for this assumption.[14] However, *Moragne*, in expanding the scope of the maritime wrongful death remedy, indicates that this may no longer be the case. In a footnote,[15] the Court rebuts the contention that Congress intended to preclude wrongful death actions on the civil side of federal court:

"If we found from the legislative history [of the DHSA] that Congress imposed exclusive jurisdiction because of a desire to avoid the presentation of wrongful-death claims to juries, that might support an inference that Congress meant to forbid nonstatuto-

---

11. Prior to *Gaudet*, it had generally been thought that the *Moragne* remedy was to be available only in those situations where no federal statutory remedy was available. Prof. Moore maintained that

"In addition to establishing the supremacy of the general maritime law over the various state wrongful death statutes, the Court in Moragne made clear that the general maritime law is itself preempted in areas where Congress enacts remedies for maritime death—such as the Death on the High Seas Act and the Jones Act." 7A Moore's Federal Practice (1973 Cum. Supp.) ¶ 330[2] n. 5.

This interpretation would appear to be consistent with the language of Justice Harlan's opinion in *Moragne*, which stressed the need for the remedy "[to] assure uniform vindication of federal policies . . . . [in situations not covered by federal statutes]." 398 U.S. at 401, 90 S.Ct. at 1788. He warned against "the fashioning of a whole new body of federal law," *Id.* at 405, 90 S. Ct. at 1790, stating that lower courts would find "persuasive analogy for guidance" in the accumulated experiences under the state wrongful death statutes and the DHSA.

*Gaudet*, however, holds that the federal statutes enjoy no such primacy. Justice Powell, dissenting, reads the decision as an unwarranted extension of *Moragne*, one that is wholly unsupported by the language of *Moragne* itself, and points up the confusion that the two decisions, read together, will interject into the field of maritime law:

" . . . *Moragne*, which was essentially a response to a gap in maritime remedies for deaths occurring in state territorial waters, explicitly counsel[ed] against the sort of *tabula rasa* restructuring of the law of admiralty undertaken by the majority. . . .

. . . Disregarding the source of law endorsed by *Moragne*, as well as the concept of uniformity expressed in that opinion, the Court has fashioned a new substantive right of recovery in conflict with 'accepted maritime law' and a new body of law with regard to the elements of damages recoverable in admiralty wrongful death actions." *Gaudet supra* at 596, 94 S.Ct. at 820.

12. *Weeks* v. *Alonzo Cothron, Inc.*, 493 F.2d 538, 542 (5th Cir. 1974); *McDonald* v. *Federal Barge Lines, Inc.*, 496 F.2d 1376 (5th Cir. 1974); *Skidmore* v. *Grueninger*, 506 F.2d 716, 728 (5th Cir. 1975); *Muirhead* v. *Pacific Inland Navigation, Inc.*, 378 F.Supp. 361 (W.D.Wash.1974).

13. See note 11, *supra*.

14. *Egan* v. *Donaldson-Atlantic Line*, 37 F. Supp. 909 (S.D.N.Y.1941); *Noel* v. *Venezolana*, 154 F.Supp. 162 (S.D.N.Y.1962); *Lacey* v. *Wiggins Airways*, 95 F.Supp. 916 (D.Mass.1951).

15. 398 U.S. 399, n. 14, 90 S.Ct. 1772, 1787, 26 L.Ed.2d 339.

ry maritime actions for wrongful death, which might come before state or federal juries. . . . This . . . disregards the 'saving clause' in 28 U.S.C. § 1333, and the fact that federal maritime law is applicable to suits brought in state courts under the permission of that [Act]."

After examining this legislative history, and finding no such intention to prevent trying maritime causes before juries, the Court reached the conclusion that the existence of federal and state statutes with respect to bringing certain actions in admiralty cannot be taken to foreclose bringing those actions on the civil side, with jury trial. While this added dimension introduced by *Moragne* has no direct relevance to this case in its present posture,[16] it is mentioned here so that the parties will be aware of how broadly federal courts must now interpret the scope of this new maritime remedy consistent with *Moragne* and *Gaudet*.

C. *In fashioning a remedy for maritime wrongful death, the Court will be guided but is not bound by the nature and scope of the remedies afforded by existing relevant federal and state statutes.*

If plaintiff were to prove his case herein, this Court, following *Moragne* and *Gaudet*, would be bound to fashion a remedy "designed to extend to the dependents of maritime wrongful death victims admiralty's 'special solicitude for the welfare of those men who under-[take] to venture upon hazardous and unpredictable sea voyages'." *Gaudet*, supra at 577, 94 S.Ct. at 811. Justice Brennan, writing for the majority in

*Gaudet*, makes clear the Supreme Court's conclusion that the power of federal courts to fashion such a remedy is broad, indeed:

"*Moragne* . . . requires that the shape of the new maritime wrongful death remedy (not a statutory creation but judge-made, see *The Tungus* v. *Skovgaard*, 358 U.S. 588, 611, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959) (separate opinion)) be guided by the principle of maritime law that 'certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules,' *The Sea Gull*, 21 F.Cas. p. 909 (No. 12,578) (C.L.Md.1865) quoted in *Moragne*, 398 U.S. at 387, 90 S.Ct. at 1781." *Gaudet, supra* at 583, 94 S.Ct. at 814.

It follows that courts are not bound by the specific provisions of any federal or state statute in fashioning a remedy for maritime wrongful death, including those statutes which might otherwise directly govern the cases before them. The central concern of the Court must be the "special solicitude" for the dependents of the victim who relied upon her for support.[17] In the context of a claim such as the instant one, which might formerly have come exclusively under the DHSA, the Court is not limited in fixing damages, for example, by the requirement of that Act that damages be awarded only for "loss of support." In fashioning a general maritime remedy, the Court will look for guidance to other statutes, which may allow recovery for such losses as loss of society or funeral expenses, if the Court deems

16. Plaintiff's original demand for a jury trial, contained in his initial complaint, was directed at civil causes of action for wrongful death. The amended complaint, which focused primarily on the DHSA and general maritime wrongful death claims, contained no such demand. As the amended complaint raised new issues not contained in previous pleadings, a jury trial would have to be demanded, before this Court would consider the question. 9 Wright & Miller, § 2320.

17. In light of the absence of controlling statutory language which would determine who is a dependent for purposes of a common law maritime claim for wrongful death, defendant's contention that plaintiff has insufficiently pleaded "dependent relative" status under the DHSA does not present an issue for decision by this Court.

such awards appropriate in light of the proof before it.

### IV. *CONCLUSION*

The Court concludes that it has admiralty jurisdiction under 28 U.S.C. § 1333 of a claim for the wrongful death of plaintiff's decedent arising from the crash of defendant's airplane into Greek territorial waters. It further finds that plaintiff has alleged facts which constitute a valid claim for wrongful death under general principles of maritime law sufficient to survive a motion to dismiss.