Lorraine P. STANFORD, Executrix of the Estate of William L. Stanford, Plaintiff,

v.

KUWAIT AIRWAYS CORPORATION, et al., Defendants.

Edwena R. HEGNA, Executrix of the Estate of Charles F. Hegna, Plaintiff,

v.

KUWAIT AIRWAYS CORPORATION, et al., Defendants.

Nos. 85 Civ. 0477 (SWK), 85 Civ. 2448 (SWK).

United States District Court, S.D. New York.

Oct. 8, 1986.

Dupont, Tobin, Levin, Carberry & O'Malley by Ralph P. Dupont, New London, Conn., for plaintiff.

Condon & Forsyth by Michael Holland, New York City, for defendants.

KRAM, District Judge.

Defendant Kuwait Airways Corporation ("KAC") has brought this motion to dismiss for lack of subject matter jurisdiction in two related cases presently before this Court, *Stanford v. Kuwait Airways Corp.*, 85 Civ. 0477 and *Hegna v. Kuwait Airways, Corp.*, 85 Civ. 2448. These actions were brought in early 1985 by the wives of Stanford and Hegna, respectively, individually and as executrices of their husbands' estates, against KAC, Northwest Airlines, Inc. ("Northwest"), Pan American World Airlines ("Pan Am"), International Air Transport Association ("IATA")[1] and Middle East Airlines, for the wrongful deaths of their husbands.

## PROCEDURAL HISTORY

On March 29, 1985, KAC moved to dismiss both *Stanford* and *Hegna* for lack of subject matter jurisdiction pursuant to Article 28(1) of the "Convention for the Unification of Certain Rules Relating to International Transportation by Air", declaration

---

1. IATA is a private organization of domestic and foreign air carriers engaged in scheduled international air transportation. *See* 12 C.A.B. 493, 495–98 (1951). One of IATA's major purposes set out in its Articles of Association is "to provide means for collaboration among the air transport enterprises engaged directly or indirectly in international air transport services ...". Shawcross and Beaumont, Air Law, 61–62 (2d ed. 1951). Pursuant to this purpose IATA has developed a standard "Interline Traffic Passenger Agreement", setting forth the rights and obligations of "issuing airlines" and "carrying airlines". A copy of this standard agreement was appended to plaintiffs' papers in opposition to defendants Northwest's and IATA's motions for summary judgment. It is clear that such an agreement was in effect at the time decedents purchased their tickets and that KAC, Northwest and Pan Am were parties to the agreement at that time. Such interline agreements are now quite common.

of adherence by the United States deposited at Warsaw, Poland, July 31, 1934, proclaimed October 29, 1934, 49 Stat. 3000 *et seq.*, T.S. No. 876 (1934) (the "Warsaw Convention"), or, alternatively, the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1331, 1332(a)(2)–(4), 1391(f), 1441(b), 1602–11 (1982). This motion was brought before Judge Sofaer to whom these cases had originally been assigned.

During the pendency of this motion, KAC engaged in limited discovery, relating only to jurisdictional issues. Judge Sofaer resigned from the Federal Bench in May 1985, without having decided KAC's motion to dismiss, and the *Stanford* and *Hegna* actions, with KAC's motion outstanding, were transferred to Judge Sprizzo.

Due to a conflict of interest with IATA's and Northwest's law firm, Judge Sprizzo recused himself in April 1986. Thus, these actions were assigned to this Court on April 8, 1986, with KAC's motion to dismiss still undecided.

This Court immediately scheduled a conference among the parties on May 2, 1986, and again, on June 6, 1986, to determine the status of these cases and to discuss discovery disputes. At the June 6 conference, the Court ordered KAC to comply fully with plaintiffs' discovery requests.[2] The Court of Appeals for the Second Circuit has since ordered a stay on all discovery in these actions pending a determination of KAC's motion to dismiss for lack of subject matter jurisdiction. *In re Kuwait Airways Corporation*, No. 86–3027, slip op. (2d Cir. July 25, 1986). This Court now decides that motion.

## BACKGROUND

According to the complaints, plaintiffs' decedents, William L. Stanford ("Stanford") and Charles F. Hegna ("Hegna"), were employed by the United States Department of State, Agency for International Development. Both were residents of Virginia and were stationed temporarily in Karachi, Pakistan.

In late Fall, 1984, Stanford and Hegna purchased airline tickets from a travel agent in Karachi, Pakistan, for flights originating in Karachi, stopping at points throughout the Middle East, including Sanaa, Arab Republic of Yemen ("Yemen"), and ultimately returning to Karachi. Decedents' airline tickets were "open" tickets in that they were not booked onto a specific flight or a particular airline. However, since the tickets were purchased with a United States Government Travel Request ("GTR"),[3] the tickets received by Stanford and Hegna were issued on Northwest ticket stock.

Upon arrival in Sanaa, Yemen, about halfway through their scheduled itinerary, Stanford and Hegna changed their plans and decided to fly back to Karachi from Yemen, with an intermediate stop in Kuwait. Consequently, Stanford and Hegna exchanged the unused portions of their Northwest tickets, and additional funds, for tickets on KAC flight No. 782 from Yemen to Kuwait, and KAC flight No. 221 from Kuwait to Karachi, Pakistan. The actual tickets for the KAC flights were issued on Pan Am ticket stock.

**2.** The Court ordered KAC to proceed with discovery because, first, plaintiffs have, as a practical matter, been prevented from discovering facts from KAC throughout the almost two years these cases have been pending; second, KAC allegedly had an agency relationship with, and has allegedly promised to indemnify, co-defendants Northwest and Pan Am pursuant to the IATA Interline Traffic Passenger Agreement, Art. V, para. (1); third, KAC, even if a non-party to these actions, could still be required to comply with plaintiffs' discovery requests. Fed.R. Civ.P. Rules 30, 31, 34(c) and 45(d)(1).

**3.** GTRs were used, instead of cash, by United States government officials to facilitate their official travel orders. According to regulations in effect at that time, GTRs could only be issued to an American flag carrier. Thus, an American flag carrier which wanted to sell any tickets to United States officials abroad had to agree to the use of its ticket stock by non-American flag carriers.

The obligations and responsibilities of carriers providing joint services—where, for example, Northwest issued the airline ticket and KAC provided the carriage—are defined by interline agreements. In this case, Northwest, KAC and Pan Am was each a party to the Interline Traffic Passenger Agreement.

Stanford and Hegna boarded KAC flight No. 221 in Kuwait on December 3, 1984. Approximately one hour after a refueling stop in Dubai, United Arab Emirates, the plane was hijacked by terrorists. Plaintiffs allege that the hijacking occurred while the plane was flying over the Gulf of Oman and the Arabian Sea, approximately eighty miles from Karachi.

The hijackers forced the pilot to land the plane at Mehrabad Airport in Tehran, Iran, on December 4, 1984. Shortly after the aircraft landed, Charles Hegna was allegedly shot to death by the hijackers. On December 6, 1984, William Stanford was allegedly shot to death by the hijackers after being imprisoned and tortured for two days.

## DISCUSSION

Plaintiffs bring these motions for the wrongful deaths of their husbands. They allege causes of action for wrongful death under Virginia state law, breach of contract, and causes of action arising under common law in admiralty.

KAC brought this motion to dismiss for lack of subject matter jurisdiction. KAC claims that decedents engaged in "international transportation" as defined by Article I of the Warsaw Convention, and thus, the rights of the passengers aboard the hijacked aircraft are governed by the Convention. KAC further asserts that Article 28(1) of the Warsaw Convention precludes plaintiffs from maintaining these actions before this Court because this Court is not one of the four fora available to plaintiffs under Article 28(1).

For the reasons that follow, the Court agrees with defendant KAC and grants its motion to dismiss for lack of subject matter jurisdiction.

The provisions of the Warsaw Convention control this action. The United States has been a party to the Warsaw Convention since October 29, 1934, and the Convention, as a treaty of the United States, is the supreme law of the land. U.S. Const. Art. VI, cl. 2. *See Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985); *Trans World Airlines v. Franklin Mint Corp.*, 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984); *Smith v. Canadian Pacific Airways, Ltd.*, 452 F.2d 798 (2d Cir.1971).

Moreover, this action falls squarely within the dictates of Article 1 of the Convention.[4] Article 1 states that the Warsaw Convention applies to "all international transportation of persons, baggage or goods, performed by aircraft for hire". Article 1(2) further defines "international transportation" as

any transportation in which, according to the contract made by the parties, the place of departure and the place of destination ... are situated ... within the territories of two High Contracting Parties....

49 Stat. 3014. The decedents' tickets provided for travel from the Arab Republic of Yemen to Kuwait to Pakistan. The Court finds all these countries to be High Contracting Parties to the Warsaw Convention. Thus, the Convention applies to decedents' transportation and its provisions control the rights of the parties. *Recumar, Inc. v. KLM Royal Dutch Airlines*, 608 F.Supp. 795, 797 (S.D.N.Y.1985).

The Convention contains its own jurisdiction provision. Article 28(1) of the Warsaw Convention determines in the treaty, or national, sense where subject matter jurisdiction over an action may lie.

Article 28(1) provides four alternative fora: (a) the domicile of the carrier; (b) the carrier's principal place of business; (c) the carrier's place of business through which the contract was made; or (d) the place of destination. *See In re Air Crash Disaster at Malaga, Spain*, 577 F.Supp. 1013 (E.D. N.Y.1984), *aff'd, sub nom, Petrire v. Spantax, S.A.*, 756 F.2d 263 (2d Cir.1985). None of these specified fora is in the United States.

---

**4.** The Warsaw Convention, Art. 17, provides that a carrier shall be liable for the death or wounding of a passenger in the event of an accident occurring on board the aircraft. It is clear that a hijacking is an "accident" within the meaning of the Convention. *Husserl v. Swiss Air Transport Co.*, 351 F.Supp. 702, 706 (S.D.N.Y.1971), *aff'd*, 485 F.2d 1240 (2d Cir.1973).

KAC is a wholly state-owned enterprise, organized and operating under the laws of Kuwait. Therefore, under Article 28(1), KAC is domiciled in Kuwait. *See Canadian Pacific Airways, supra,* 452 F.2d at 802.

For Article 28 purposes, a corporation may have only one place of business. *Canadian Pacific Airways, supra,* 452 F.2d at 801 n. 13; *Eck v. United Arab Airlines, Inc.,* 360 F.2d 804, 809 n. 9 (2d Cir.1966). KAC's corporate and operational headquarters are in Kuwait, a large majority of its employees work in Kuwait and all its aircraft are registered there. The Court therefore finds that KAC's principal place of business is in Kuwait. *See Sabharwal v. Kuwait Airways Corp.,* No. 83 Civ. 5016, slip op. (E.D.N.Y. November 5, 1984) (available on Lexis, Genfed library, Dist. file).

The third provision of Article 28(1) provides for an action to be brought at the carrier's place of business through which the contract was made. In this context, the contract was made where decedents' airline tickets were purchased and issued—Sanaa, Yemen. *See Id.; Canadian Pacific Airways, supra,* 452 F.2d at 803; *Eck v. United Arab Airlines, Inc., supra,* 360 F.2d at 814–15.

The place of destination under Article 28(1) is the ultimate destination of the transportation stated on the passenger ticket. *Recumar, supra,* 608 F.Supp. at 798. The parties do not dispute that Karachi, Pakistan was decedents' destination.

The Second Circuit has held that the United States courts cannot assert subject matter jurisdiction over an action for damages governed by the Warsaw Convention where none of the fora delineated in Article 28(1) is in the United States. *Petrire v.*

*Spantax, S.A.,* 756 F.2d 263 (2d Cir.1985); *Gayda v. LOT Polish Airlines,* 702 F.2d 424, 426 (2d Cir.1983); *Canadian Pacific Airways, supra,* 452 F.2d at 801. Since this Court has determined that none of the places specified in Article 28(1) of the Convention is in the United States, these actions are dismissed as against defendant KAC for lack of subject matter jurisdiction.[5] *See Gayda, supra,* 702 F.2d at 425.

The Court has determined that no jurisdiction exists over KAC under the Warsaw Convention; thus, the Court does not reach the issue of jurisdiction under the Foreign Sovereign Immunities Act.

The Court further orders that KAC is to provide all the discovery the Court has already ordered. *See supra,* n. 2.

SO ORDERED.

---

**5.** The Court has examined plaintiffs' other arguments in support of subject matter jurisdiction and finds them to be without merit. In doing so, the Court also notes that the Second Circuit apparently considers the Warsaw Convention to be the exclusive source of carrier liability. *Benjamin v. British European Airways,* 572 F.2d 913, 918–19 (2d Cir.1978), *cert. denied,* 439 U.S.

1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). *See Canadian Pacific Airways, supra; In re Air Crash Disaster at Warsaw, Poland,* 535 F.Supp. 833 (E.D.N.Y.1982); *Chutter v. KLM Royal Dutch Airlines,* 132 F.Supp. 611 (S.D.N.Y.1955). *But see Hammill v. Olympic Airways, S.A.,* 398 F.Supp. 829 (D.D.C.1975).