Larry OSBORNE, Wava Osborne, Ky Osborne, Ann Musser, Bob Musser, Andy Regnier, Terese Regnier, John Regnier, Jeannine Meloon Rowe, James Kalugira, Mary Kevari, Clara Goldberg, Susan Wakefield, Josephf Bbundu, George Renner, and Linda Renner Plaintiffs,

v.

BRITISH AIRWAYS PLC CORPORATION Defendant.

No. CIV.A. G–01–522.

United States District Court, S.D. Texas, Galveston Division.

April 24, 2002.

A Craig Eiland, Houston, TX, for plaintiffs.

Jad J Stepp, Halla & Purcell, Houston, TX, for defendant.

## ORDER GRANTING DEFENDANT'S UNOPPOSED PARTIAL MOTION TO DISMISS

KENT, District Judge.

This is a personal injury lawsuit filed by sixteen individuals from Texas, California, New York, Maryland, Connecticut and Pennsylvania against Defendant British Airways PLC Corporation ("British Airways") pursuant to the treaty popularly known as the Warsaw Convention.[1] Now before the Court is British Airways's Unopposed Motion to Dismiss Plaintiffs' First Amended Complaint as to Plaintiffs George and Linda Renner (collectively, the "Renners") for Lack of Subject Matter Jurisdiction.[2] For the reasons articulated below, the Court ascertains that British Airways's Motion should be **GRANTED**.

### I.

The Renners are American missionaries employed at the Nairobi Evangelical Graduate School of Theology in Nairobi, Kenya. While in Kenya on October 31, 2000, Linda Renner purchased two British Airways round-trip tickets for travel from Nairobi to Orlando, Florida (via London, England) and back to Nairobi (again via London) so that the Renners could return to the United States for the holiday season. The Renners used these tickets to travel from Nairobi to London on November 22, 2000 and thence London to Orlando the next day. After the holidays, the Renners flew

from Orlando to London on December 27, 2000 and then from London to Nairobi on December 28, 2000. On the second leg of their return trip, a deranged passenger broke into the flight deck and attempted to take control of the aircraft. During the resulting commotion, the aircraft suddenly plunged approximately 10,000 feet towards the ground below. The Renners filed this lawsuit against British Airways to recover for physical and psychological injuries that they allegedly suffered as a result of that incident. British Airways now argues that the Court lacks subject matter jurisdiction over the Renners' claims. The Court agrees.

### II.

The Warsaw Convention ("Convention") is an multinational treaty applicable to "all international transportation of persons, baggage, or goods performed by aircraft for hire." Warsaw Convention, 49 U.S.C. § 40105, Art. 1(1); *see also El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 162, 119 S.Ct. 662, 668, 142 L.Ed.2d 576 (1999). As a ratified treaty of the United States, the Convention is equal in stature and force to any other federal law. *See* U.S. Const. art. VI, cl. 2 ("All treaties made ... under the authority of the United States, shall be the supreme Law of the Land"); *Dalton v. Delta Airlines, Inc.*, 570 F.2d 1244, 1246 (5th Cir.1978). When applicable, the Convention creates the plaintiff's sole cause of action and exclusive remedy. *See* Warsaw Convention, 49 U.S.C. § 40105, Art. 24 (stating that claims for personal injuries, for damage to (or loss of) baggage or goods and for dam-

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), *reprinted in* note following 49 U.S.C. § 40105 [hereinafter Warsaw Convention].

2. Plaintiffs have failed to file a Response to Defendant's Motion within the twenty-day response period prescribed by the Local Rules of the Court. Accordingly, the Court views Defendants' Motion as unopposed. Nevertheless, the Court is bound to consider the substantive merit of Defendants' Motion.

ages occasioned by travel delays, "however founded, can only be brought subject to the conditions and limits set out in this convention"); *Dazo v. Globe Airport Sec. Servs.*, 268 F.3d 671, 675 (9th Cir.2001) ("The Convention preempts state and federal claims falling inside its scope"); *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir.1996) (concluding that the Convention "creates the exclusive cause of action and the exclusive remedy for all international transportation of persons performed by aircraft for hire").

■ As a prerequisite to invoking the Convention, the Court must determine that the incident in question occurred during "international transportation." The Convention defines "international transportation" as:

> [A]ny transportation in which, according to the contract made by the parties, the place of departure and destination, whether or not there be a break in the transportation or transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.

Warsaw Convention, 49 U.S.C. § 40105, Art. 1(2). Thus, inquiring whether the travel in question qualifies as "international" requires a careful inspection of the contract between the plaintiff and the carrier. *See Santleben v. Continental Airlines*, 178 F.Supp.2d 752, 754 (S.D.Tex. 2001); *McCaskey v. Continental Airlines, Inc.*, 159 F.Supp.2d 562, 569 (S.D.Tex. 2001). In the transportation of passengers, the relevant contract for purposes of the Convention is the passenger ticket issued by the airline. *See Rabinowitz v. Scandinavian Airlines*, 741 F.Supp. 441, 443 (S.D.N.Y.1990).

■ In this case, the passenger tickets issued to the Renners by British Airways specified Nairobi as the place of departure and destination and London and Orlando as agreed stopping places. Therefore, because the place of departure and destination is situated within the territory of a single High Contracting Party (Kenya) and the agreed stopping places are within the territories of other States (the United States and the United Kingdom), the Renners' flight qualifies as "international" and the Convention applies.[3] Consequently, if the Renners cannot recover from British Airways under the Convention, no other remedy is available to them.

### III.

Having determined that the Renners' claims are governed by the Convention, the Court must now consider the issue of whether such claims may be properly asserted in an American forum. Article 28(1) of the Convention provides:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

Warsaw Convention, 49 U.S.C. § 40105, Art. 28(1). This provision clearly outlines the potential forums for the Renners' claims against British Airways: (1) the

---

**3.** Kenya became a High Contracting Party to the Convention on March 3, 1935; the United Kingdom became a High Contracting Party to the Convention on May 15, 1933; and the United States became a High Contracting Party to the Convention on October 29, 1934. *See* The Carriage by Air (Parties to Convention) Order, 1999 (Eng.).

domicile of British Airways; (2) the principal place of business of British Airways; (3) the "place of business through which the contract has been made"; and (4) the Renners' destination.

■ Unless the United States constitutes one of these four locations, the Court lacks "treaty" jurisdiction over this action. *See Campbell v. Air Jamaica, Ltd.,* 863 F.2d 1, 1 (2d Cir.1988) ("Compliance with Article 28(1) gives a nation treaty jurisdiction over a claim, so that the nation is an appropriate site for the litigation"); *Smith v. Canadian Pac. Airways, Ltd.,* 452 F.2d 798, 802 (2d Cir.1971) (explaining that where a case does not fall within any of the categories of Article 28(1) "the complaint must therefore be dismissed for lack of treaty jurisdiction"); *cf. Swaminathan v. Swiss Air Transp. Co., Ltd.,* 962 F.2d 387, 390 (5th Cir.1992) ("Article 28(1) informs of the places where suit must be brought"). In the absence of treaty jurisdiction under the Convention, federal jurisdiction under 28 U.S.C. § 1331, which permits cases arising under United States treaties, cannot be established. *See Smith,* 452 F.2d at 802. Similarly, if the Convention precludes suit, the Court's inquiry ceases without an examination of diversity jurisdiction under 28 U.S.C. § 1332(a)(2). *See id.* ("[T]reaty provisions, being of equal constitutional status, may operate under article VI of the Federal Constitution as limitations on diversity jurisdiction, just as the requirements of jurisdictional amount may so operate").

*The United Kingdom is the Domicile and Principal Place of Business of British Airways*

■ An air carrier's place of incorporation constitutes its sole domicile for purposes of Article 28(1). *See, e.g., Wyler v. Korean Air Lines Co., Ltd.,* 928 F.2d 1167, 1175 (D.C.Cir.1991); *Smith,* 452 F.2d at 802; *Pflug v. Egyptair Corp.,* 788 F.Supp. 698, 700 (E.D.N.Y.1991); *Stanford v. Ku-*

*wait Airways Corp.,* 648 F.Supp. 657, 661 (S.D.N.Y.1986). Moreover, "[u]nder Article 28 there can be only one principal place of business for an air carrier and this is normally where the air carrier is incorporated." *Swaminathan,* 962 F.2d at 390. In this case, it is undisputed that British Airways is a corporation organized and existing under the laws of the United Kingdom of Great Britain and Northern Ireland. Furthermore, British Airways's corporate and operational headquarters are in the United Kingdom and a large majority of its employees work there. As such, the Court finds that the United Kingdom is the domicile and principal place of business of the Defendant.

*Kenya is the Place of Business where the Contract was Made and the Renners' Destination*

■ The "place of business through which the contract has been made" for purposes of Article 28(1) is the location where the passenger tickets at issue were purchased. *See Smith,* 452 F.2d at 802; *Stanford,* 648 F.Supp. at 661. The Parties do not dispute that the Renners' tickets were purchased in Nairobi on October 31, 2000. Thus, Kenya represents the relevant "place of business" outlined in Article 28(1). Kenya likewise qualifies as the "place of destination." According to the Fifth Circuit, "[w]hen a person purchases a round-trip ticket, there can be but one destination, where the trip originated." *Swaminathan,* 962 F.2d at 389 (citing *Lee v. China Airlines,* 669 F.Supp. 979, 981 (C.D.Cal.1987)). This rule applies even if intermediate stopping places are scheduled. *See Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir.1983); *Lee,* 669 F.Supp. at 981. The contract between the Renners and British Airways unambiguously indicates that Kenya was the couple's final destination; and that the United States and the United Kingdom were the

Renners' intermediate stopping points. *See Swaminathan,* 962 F.2d at 389; *Petrire v. Spantax, S.A.,* 756 F.2d 263, 265 (2d Cir.1985); *see also Santleben,* 178 F.Supp.2d at 755 (explaining that the general principles of contract interpretation govern travel contracts and when such a contract is unambiguous, the objective intent of the parties as expressed in the writing controls the contract's interpretation).

## IV.

In light of the preceding analysis, the Court concludes that Article 28(1) of the Convention clearly mandates that the Renners' claims against British Airways may be properly asserted in the United Kingdom (the domicile and principal place of business of British Airways) or Kenya (the place where the tickets were purchased and the Renners' final destination). Because the United States is not one of these specified places, this Court lacks treaty jurisdiction and therefore, subject matter jurisdiction over the Renners' claims. Accordingly, British Airways's Unopposed Motion to Dismiss Plaintiffs' First Amended Complaint as to Plaintiffs George and Linda Renner is hereby **GRANTED.** The Court will issue a final judgment reflecting this decision in due course. The claims against British Airways asserted by the fourteen additional Plaintiffs remain pending as they are unaffected by this Order.

**IT IS SO ORDERED.**