**William McCARTHY**

v.

**SILVER BULK SHIPPING LTD.**

**Civ. A. No. 78–1484.**

United States District Court,
E. D. Pennsylvania.

March 19, 1980.

Charles Sovel, Freedman & Lorry, Philadelphia, Pa., for plaintiff.

Robert B. White, Jr., Rawle & Henderson, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff, William McCarthy, a longshoreman, brought this action to recover damages from defendant vessel owner, Silver Bulk Shipping, Ltd., for personal injuries sustained allegedly as the result of defendant's negligence. The action was brought pursuant to the Longshoreman's and Harbor Workers' Compensation Act, § 5(b) as amended, 33 U.S.C. § 905(b), with jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332.

On January 6, 1977, plaintiff, employed as a longshoreman by Amstar Corporation, was performing his duties in the No. 1 hold discharging a cargo of raw sugar from the M/V Silvertweed, a vessel owned and operated by defendant, when he was struck on the head by a 400 lb. hulk of frozen sugar. After a four-day trial (June 5 through June 8, 1979) a jury found defendant's negligence had proximately caused plaintiff's injuries and awarded plaintiff $111,318.50 in damages. Defendant has filed post-trial motions pursuant to Rule 50 of the Federal Rules of Civil Procedure for judgment notwithstanding the verdict, or in the alternative for a new trial.

In 1972 Congress amended the Longshoremen's and Harbor Workers' Compensation Act of 1927 (LHWCA), 33 U.S.C. §§ 901–50, fundamentally altering the relationships among vessel owners, stevedores (employers) and longshoremen.[1] Pursuant

---

1. For background history and analysis of the changes, *see Griffith v. Wheeling-Pittsburgh Steel Corp.*, 521 F.2d 31 (3d Cir. 1975), *cert.* denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976) *("Griffith I"); Hurst v. Triad Shipping Co.*, 554 F.2d 1237 (3d Cir.) *cert. denied,*

to the changes, a vessel owner would no longer be strictly liable for a longshoreman's injuries on the basis of unseaworthiness or nondelegable duty, or for a stevedore's negligence on a *respondeat superior* theory. Concomitantly, an owner no longer would have a cause of action against a stevedore for indemnification. Instead, an owner would be liable to an injured longshoreman only for its own negligence that proximately caused the injury. *Rich v. U.S. Lines*, 596 F.2d 541, 545 (3d Cir. 1979). In addition, an employer's (stevedore's) only liability would be under a workers' compensation claim. For the restrictions on his actions against owners and stevedores, the longshoreman received increased compensation benefits and coverage under the Act. In short, under the Act as amended, a longshoreman can bring suit only against a vessel owner and only for the owner's negligence. Although Congress did not define the standard of care by which to measure a vessel owner's liability, the House Report on the amendment made clear that vessels owe some duty of care to longshoremen:

> Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition.

H.R.Rep.No.1441, 92 Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 4698, 4704 [hereinafter "House Report"].

In a number of post-amendment cases, the Third Circuit has begun to define the extent of an owner's liability.[2] In accordance with the Congressional purpose to have a uniform federal law applied to § 905(b) cases[3], the Third Circuit has ruled that the court should look to the Restatement (Second) of Torts for guidance, but only when the sections in question "are clearly consistent with the purposes and policies of the Act." *Rich, supra,* 596 F.2d at 547; *Hurst, supra,* 554 F.2d at 1249 n.35.[4]

Central to Congressional policy and purpose is the recognition that the Act places primary responsible for safe working conditions on the stevedore. *Brown, supra,* 545 F.2d at 860; *Rich, supra,* 596 F.2d at 548. Although the Third Circuit reversed and remanded in *Marant* on this basis, *supra,* 550 F.2d at 144, the Court of Appeals has consistently recognized that although owner and employer are not concurrently or jointly responsible for the safety of long-

---

434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

2. *Griffith I, supra; Brown v. Ivarans Rederi A/S,* 545 F.2d 854 (3d Cir. 1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977); *Marant v. Farrell Lines, Inc.,* 550 F.2d 142 (3d Cir. 1977); *Hurst, supra; Rich, supra; Griffith v. Wheeling-Pittsburgh Steel Corp.,* 610 F.2d 116 (3d Cir. 1979) ("Griffith II").

3. *See* House Report at 4705: "[T]he Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law." *See also Brown, supra,* 545 F.2d at 862–63.

4. The court in *Brown* held that sections 281–83, 302A, 305, 452, of the Restatement (Second) of Torts apply to § 905(b) cases. In addition,

given the clearly stated intention of Congress that the doctrines of contributory negligence as a complete bar and assumption of the risk are not to apply in cases decided under § 905(b), House Report at 4705, the Third Circuit has held that §§ 343 and 343A of the Restatement are not applicable. *Griffith II, supra,* 610 F.2d at 125; *Hurst, supra,* 554 F.2d at 1249 n.35. In *Hurst* the Court of Appeals recognized a stevedore as an independent contractor and held that Restatement § 409 (employer generally not liable for acts of an independent contractor; subsequent sections note the exceptions) applies to § 905(b) cases with a § 414 exception (where the owner retains a degree of control over work of the independent contractor such that liability may be imposed on the owner). The court held that the exceptions stated in §§ 416 through 429 of the Restatement rest on theories of vicarious liability and therefore are not applicable to a § 905(b) case.

shoremen, they can be concurrently liable for injuries they have proximately caused. That is, a vessel owner can be found liable for its negligence notwithstanding the negligence of the stevedore. *Griffith II, supra,* 610 F.2d at 124–25. Indeed, as the Supreme Court has observed in its most recent opinion on the 1972 amendments, "a longshoreman who is injured by the concurrent negligence of the stevedore and the ship may recover for the entire amount of his injuries from the ship." *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 266, 99 S.Ct. 2753, 2760, 61 L.Ed.2d 521 (1979).

In its most recent opinion in a § 905(b) case, the Third Circuit has held that "[the section] imposes on vessel owners the same duty to exercise 'reasonable care under the circumstances of each case' that would be applicable to a land based business." *Griffith II, supra,* 610 F.2d at 125. Thus it held that a vessel could be found negligent on a showing:

(1) that the vessel knew of or by the exercise of reasonable care could have discovered the condition on board ship that led to the injury; (2) that the vessel knew or should have known that the condition would pose an unreasonable risk of harm to longshoremen working on board ship; and (3) that the vessel failed to exercise reasonable care to protect the longshoremen against that danger.

*Id.* at 126. This standard must be analyzed in the context of defendant's post-trial motions.[5]

### A. Motion for Judgment Notwithstanding the Verdict

The standard for a motion for judgment notwithstanding the verdict[6] is whether plaintiff has adduced sufficient evidence to create an issue of fact for the jury. The court does not weigh the evidence or pass on the credibility of witnesses. In application, the motion is granted sparingly, since it deprives a party of a jury's determination of the facts. *Jeanes v. Milner,* 428 F.2d 598, 601 (8th Cir. 1970).

Defendant bases its motion for judgment notwithstanding the verdict on four general points:

1. That the evidence offered was not sufficient to establish a cause of action under the applicable law;

2. That defendant was relieved of liability under § 452(2) of the Restatement (Second) of Torts;

3. That the evidence was not sufficient to show that defendant's negligence caused plaintiff's injuries;

4. That the jury's findings as to loss of earnings "are against the clear weight of the evidence." Shipowners' Brief in Support of its Post-trial motions at 12.

### 1. Cause of Action under § 905(b)

Plaintiff's case in brief is that defendant negligently maintained the hatch covers of the vessel so that sea water leaked into Hold No. 1 and in combination with freezing temperatures caused some of the sugar to freeze, thereby creating the dangerous condition that caused plaintiff's injuries.[7] There was undisputed evidence that the cargo of sugar in Nos. 1 and 6 holds was "damaged by reason of wetting," that chemical tests showed a saline reaction (presence of seawater), that the source of the entry into No. 1 hold was through the

---

5. In accordance with Rule 50 of the Federal Rules of Civil Procedure, defendant properly moved for a directed verdict at the close of plaintiff's case and when denied, again at the close of all of the evidence. The motion for judgment notwithstanding the verdict or in the alternative for a new trial was timely filed.

6. The standard for deciding directed verdict and judgment notwithstanding the verdict motions is the same. *Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1210 n.5 (3d Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51,

27 L.Ed.2d 55 (1970); *Wright & Miller,* Federal Practice & Procedure, Civil § 2524 at 542.

7. Under this theory it is irrelevant that defendant did not know that the sugar was frozen until the hatch was opened. *Compare Valle v. Jugoslavenska Linejska Plovidba,* 434 F.Supp. 608, 611 (S.D.N.Y.1977) ("shipowner does not have a duty to discover and correct hidden defects in the cargo after his ship has been loaded by competent stevedores.")

hatch cover, that heavy rust on the raised lips of the hatch coamings prevented the cover from providing a water tight seal. *American Marine Services, Inc. Survey Report,* Transcript (T) 1–18 through 22. In addition there was undisputed testimony that it would take years to build up the pattern of rust on the coaming lip, T 1–47, and that the vessel's crew was responsible for maintaining the hatch closing system. T 1–48.

That defendant was negligent in failing to maintain the hatch covers in a reasonably safe condition was not disputed at trial, and I so charged the jury. T 3–58 through 59; see also T 2–55 through 56 (during argument on defendant's motion for directed verdict, defendant conceded negligence with regard to the hatch covers); Shipowner's Brief at 2.

■ That a vessel owes a duty of care for reasonable maintenance of the ship is equally clear. The Third Circuit in *Hurst* held that the vessel's "responsibility relates to the condition of the ship itself, not the activities of the stevedore." *Supra,* 554 F.2d at 1250 n.35. In *Rich* the court held that plaintiff is required to show that the vessel owner normally assumes responsibility for the maintenance and care of the items in question. *Supra,* 596 F.2d at 553.[8]

By asserting that plaintiff failed to produce sufficient evidence to establish a cause of action under the applicable law, defendant in effect is claiming that no duty of care was owed. In support of this proposition defendant claims, as did the vessel owner in *Griffith II,* that plaintiff has failed to adduce sufficient evidence as to the second prong of the *Griffith II* test:[9]

. . . . .

(2) That the vessel knew or should have known that the condition would pose an unreasonable risk of harm to longshoremen working on board ship.

Inasmuch as defendant knew or should have known of the rusty condition of the hatch covers and failed to correct it, defendant is held to knowledge that seawater could, as it did, enter the holds thus damaging the cargo. Defendant argues that under Restatement (Second) § 302, the condition created was harmless if left to itself. Thus, the defendant would only be negligent if it reasonably could recognize the subsequent actions of the stevedores as probable. Restatement (Second) § 302 Comment *d. Probability of Intervening Action.*

■ It is disingenuous of defendant to argue that "the improperly maintained hatch cover and the bulk sugar in the hatch at the time the vessel arrived in Philadelphia, were harmless of themselves," Shipowner's Brief at 3, and that it could not foresee the stevedore's subsequent acts as "probable," Restatement (Second) § 302 Comment *d.*[10] The owner contracted with the stevedore to unload the cargo, thus obviously aware that longshoremen would be working in the hold. That is, there is no possibility that the condition in the hold resulting from the improperly maintained hatch covers would go unacted upon by others. Thus it was reasonably foreseeable

---

**8.** As distinct from the instant case, in *Rich,* "the vessel owner's sole involvement in the events leading up to Rich's injury amounted to taking no action to remedy a condition of the cargo not customarily his responsibility." *Supra,* 596 F.2d at 555.

**9.** In *Griffith II* the Court of Appeals concluded, "Certainly, there was ample evidence to support the court's conclusion that American knew or should have known of the rusted, decrepit condition of the covers on barge 2730, and that American failed to exercise reasonable care to correct that condition." *Supra,* 610 F.2d at 126. Defendant also argues that under the standard of care established in Restatement

(Second) of Torts §§ 343 and 343A, the condition of the sugar was "known and obvious" and defendant is thereby relieved of liability. As noted *supra,* note 4, the Third Circuit has rejected the application of these sections to § 905(b) cases on the grounds that they are inconsistent with Congressional policy to abolish doctrines of contributory negligence as a complete bar, assumption of the risk, and nondelegable duty in § 905(b) cases.

**10.** It should be noted that § 302 only involves the foreseeability of the subsequent acts, not whether they were negligent. *Compare* § 302A.

that water leakage into the hold alone or in combination with winter weather conditions could cause the sugar to freeze, thereby creating a hazardous working condition for the longshoremen.

■ In addition, in this case there was evidence that plaintiff used standard equipment for unloading a cargo of sugar, T 1–85, that use of other equipment was not practical given the circumstances, T 1–85, 2–28 through 30, that the three-part cycle method of discharge was common in the industry, T 1–27 through 32, 1–124, 2–83 through 84. This evidence was more than sufficient to create an issue for jury consideration. The only evidence to the contrary was offered by defendant's expert Mr. Keeler who testified that when he supervised stevedoring operations a different method was used; Mr. Keeler further testified that the methods with which he was familiar were out-of-date. T 2–83.

This is not a case where the vessel owner turned over a ship in a reasonably safe condition to a stevedore, and a longshoreman is attempting to impose liability on the owner.[11] As the Court of Appeals noted in *Rich*, it had remanded the cases in *Brown* and *Marant* in light of evidence "suggesting the vessel owner was directly involved with creating the condition which resulted in the longshoreman's injury," *supra*, 596 F.2d at 555. The court in *Rich* further explained that in view of the purpose of the Act to encourage safety on the waterfront, "in order to impose liability on the vessel owner under Section 905(b), we must be sure that

it and not the stevedore is in the position best able to prevent similar accidents from arising in the future." *Supra*, 596 F.2d at 554. In light of the conceded negligence of the defendant, the testimony as to use of unexceptionable methods of discharging a cargo, and the policy underlying the Act, I conclude there was sufficient evidence for plaintiff to have prevailed under the standard enunciated in *Griffith II*.

### 2. Superseding Cause

Defendant argues that as a matter of law it should be relieved of liability under § 452(2) of the Restatement (Second) of Torts.[12] Section 452 in its entirety provides:

(1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm.

(2) Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.

Section 452 itself gives little assistance in defining the standards for measuring when responsibility has shifted to a third person, thereby relieving the original actor of liability for negligence. Comment *d.* does state that subsection (2) covers the "exceptional" cases.[13] Comment *e.*, however, notes that in

---

11. *Compare Hurst, supra*, 554 F.2d at 1249 n.35.

12. Contrary to plaintiff's assertion, the Third Circuit has expressly held that § 452(2) is applicable to § 905(b) cases. *Brown, supra*, 545 F.2d at 863; Plaintiff's Brief in opposition to defendant's post-trial motions at 16.

13. This statement comports with Third Circuit holdings in § 402A products liability cases that the intervening act must be

so extraordinary as not to have been reasonably foreseeable, and . . . whether the act was reasonably foreseeable [is] to be determined by following retrospectively the sequence of events and looking back from the harm to the negligent act rather than by

considering whether the defendant should prospectively have envisaged the events which unfolded and caused the accident. *Wilson v. American Chain and Cable Co.*, 364 F.2d 558, 562 (3d Cir. 1966). The *Wilson* formulation was applied by then District Judge Higginbotham in a non-products liability suit. *Hennigan v. Atlantic Refining Co.*, 282 F.Supp. 667 (E.D.Pa.1967), *aff'd*, 400 F.2d 857 (3d Cir. 1968), *cert. denied, City of Philadelphia v. Atlantic Refining Co.*, 395 U.S. 904, 89 S.Ct. 1739, 23 L.Ed.2d 216 (1969). In its most recent decision involving a superseding cause claim in a non-products liability case, the Third Circuit cited Pennsylvania law that incorporates a re-

many cases the duties and obligations are such that they cannot be shifted.

Defendant advances a number of reasons why the duty to prevent harm had shifted to the stevedore. Shipowner's Brief at 6–7.[14] Essentially defendant raises three issues: primary responsibility for work place safety rests on the stevedore[15]; the stevedore's method of discharging the cargo was negligent[16]; because the stevedore and plaintiff knew of the condition of the cargo, they assumed the risk and/or were contributorily negligent.[17]

That the major responsibility for the proper and safe conduct of the work rests on the stevedore is not disputed. *Brown, supra*, 545 F.2d at 860; *Marant, supra*, 550 F.2d at 144; *Rich, supra*, 596 F.2d at 548. The imposition of a duty on stevedores does not, however, relieve owners of their duty to exercise reasonable care with regard to the condition of the ship. As the Supreme Court made clear in *Edmonds*, the 1972 amendments provide for the concurrent negligence of stevedore and vessel owner. In this light, no Third Circuit case has held that the sole responsibility for safety rests on the stevedore.

With regard to the stevedore's negligence, the fact that "the stevedore has been negligent cannot be automatically decisive of [the] question [whether the vessel has breached its duty of care]." *Griffith II, supra*, 610 F.2d at 125. As noted at trial in

the instant case, proof that the stevedore used improper methods would only show that the stevedore may have been a joint or concurrent tortfeasor. T 2–77.[18] Thus, assuming negligence on the part of a stevedore, a vessel owner can still be liable for its own negligence. Short of showing extraordinary, *i. e.*, unforeseeable, acts by the stevedore, an owner cannot claim relief from liability under § 452(2). The defendant here has not shown any degree of extraordinariness in the stevedore's actions such that as a matter of law I could rule defendant relieved of liability under § 452(2).

Interrogatory No. 2 was presented to the jury as follows:

Q. If your answer to No. 1 is YES,[19] was this a condition which could have been remedied by a reasonable stevedore?

At the time of trial it was understood by counsel and myself that if the jury answered "Yes" to No. 2, defendant would have been relieved of liability, T 3–39 through 42, on a theory that a vessel owner's duty encompasses knowledge of what a reasonable stevedore would do, and if the stevedore could have remedied the condition, then there would have been no breach of duty. The opinion in *Griffith II*, filed after this trial, appears to reject this analysis. The court reasoned that this approach would relieve a vessel of liability for its own negli-

---

quirement of extraordinariness. *Bradshaw v. Rawlings*, 612 F.2d 135, 143 (3d Cir. 1979). Most of these suits involved the application of state law concepts of strict liability under diversity jurisdiction. There is no reason, however, not to apply in a federal case the principle that it is only the extraordinary or the unforeseen that can be characterized as a superseding cause, for the absence of a fault requirement in the initial acts has no bearing on the unforeseeability of a third person's acts. Whether based on a fault or no-fault theory, a party had breached a duty and would have been liable save for circumstances that *shifted* the duty.

14. As in *Blackburn v. Prudential Lines, Inc.*, "Defendant merely asserts, without demonstrating why, that this duty shifts at the time the stevedore comes on board from defendant's shoulders to the stevedore's rather than rests on both parties." 454 F.Supp. 1302, 1308 (E.D. Pa.1978).

15. Reasons Nos. (1) and (2). Shipowner's Brief at 6.

16. Reasons Nos. (7), (8), (9), (10), (11). Shipowner's Brief at 6–7.

17. Reasons Nos. (3), (4), (5), (6), (8). Shipowner's Brief at 6–7.

18. *See* discussion of stevedore negligence, *infra*, note 25 and accompanying text.

19. Interrogatory No. 1:
Did the leakage of seawater into the hold alone or in combination with the freezing temperature bring about a condition which was a substantial factor in causing the accident?

gence whenever a stevedore was negligent, by virtue of imputing "to the non-negligent longshoreman the negligence of his stevedore employer, and establish[ing] that negligence as a complete bar to recovery against the vessel." *Supra*, 610 F.2d at 124–25. Inasmuch as Interrogatory No. 2 offered defendant a possibility for relief from liability that the Third Circuit now tells us would have been improper, the question as posed to the jury is at most harmless error.

■ The Interrogatory constitutes a finding of fact, however, useful for determining defendant's motion. As I charged the jury, the Interrogatory asked whether a reasonable stevedore could have removed the "huge lump of sugar", T 3–56, that was sticking to the ribs of No. 1 hold in such a way as to have prevented the injury. Had the jury answered "Yes," *Griffith II* tells us that additional questions would have to be asked before a vessel owner would be relieved of liability.[20] By answering "No" as it did, the jury told us that the owner's negligent acts were responsible for the injury notwithstanding the acts of the stevedore. The stevedore's negligence, if any, was therefore at the least irrelevant to the injury; at most it might have enhanced the damage. Thus, on the facts as found by the jury, the acts of the stevedore could not constitute a superseding cause of the injury.[21]

■ The question in terms of defendant's motion for judgment notwithstanding the verdict is whether the evidence was sufficient for the jury to have answered the way it did. I conclude that in light of the evidence of methods used by stevedores to unload sugar cargoes and the methods used

in this particular instance, there was sufficient evidence for the jury to have concluded as it did.

■ Defendant next argues that the stevedore and longshoremen knew that the sugar was frozen when the hatch was first opened, that they knew the sugar would fall if left caked, that they had completed two discharge cycles before the accident, and that they received "distress wages" for unloading the cargo. In essence, these arguments rest on theories that the stevedore and plaintiff had assumed the risk and/or were contributorily negligent. Neither is a defense to a § 905(b) claim. *See supra*, note 4.

### 3. *Causation*

Defendant asserts that plaintiff did not introduce sufficient evidence for the jury to have answered Interrogatory No. 1. *See supra*, note 19. Plaintiff's case required the jury to conclude that it was more probable than not that the seawater in the hold in combination with the freezing temperatures caused the sugar to freeze to the ribs of the ship. Defendant, on the other hand, argued to the jury that the moisture content of the sugar itself, in combination with the freezing temperatures, caused the sugar to freeze.

■ Plaintiff introduced evidence as to the presence of seawater in the sugar, the source of its entry, the weather conditions at the Port of Philadelphia when the ship was berthed there for unloading, the discoloration of the frozen sugar when the moisture is seawater. I conclude that this evidence was sufficient for a jury reasonably to infer that the wetness due to leak-

---

**20.** In *Griffith II*, the Court of Appeals stated that it was not holding "that the likelihood of negligent conduct on the part of the stevedoring contractor is always irrelevant in determining whether the vessel has breached its duty of due care." *Supra*, 610 F.2d at 125. Although the court did not state when the likelihood of negligent conduct would be relevant, several observations are in order. First, the holding suggests that the likelihood of a stevedore's negligent conduct is sometimes irrelevant. Second, the implication (the Court of Appeals refers the reader to §§ 302A and 302 of the

Restatement (Second) of Torts) is that if the negligence is foreseeable, the owner would not be relieved of liability; conversely, if unforeseeable (*i. e.*, extraordinary) the owner would not be held to have breached its duty of care.

**21.** Thus if under *Griffith II* a more appropriate second interrogatory would have asked the jury to decide if the stevedore's acts constituted a superseding cause of the injury, the jury in fact answered that question by its response to the Interrogatory as originally formulated.

age, as opposed to the moisture content of the sugar itself caused the freezing. In this light, the jury was instructed at length as to the difference between mere speculation and a conclusion resting on reasonable inferences. T 3–55 through 58.[22]

#### 4. Loss of Earnings

 Defendant's arguments that the jury's answers to Interrogatories Nos. 3(a) and 5 are "against the clear weight of the evidence"[23] should be directed to a motion for a new trial, and not for judgment notwithstanding the verdict.

#### B. Motion for New Trial[24]

The defendant asserts that I erred in my rulings that the stevedore's negligence was not at issue and that plaintiff's application for a union pension based on age and service was not admissible evidence; and that there was no jury charge on contributory negligence. I conclude that none of these assertions is a sufficient basis for granting a new trial.

#### 1. Stevedore's Negligence

Negligence on the part of the stevedore does not necessarily relieve a negligent owner of liability. *Griffith II, supra,* 610 F.2d at 125. In this case negligence of the owner was not in dispute; the issue for the jury was causation: was the negligence of the owner the proximate cause of plaintiff's injuries. In this regard proof of the stevedore's negligence was irrelevant.[25] Defendant asserts that its defense, for factual consideration by the jury, was that the negligence of the stevedore was the sole proximate cause of the accident. Shipowner's Brief at 14. Defendant needed to show that the stevedore's acts or omissions, negligent *vel non,* were the sole proximate cause of plaintiff's injuries.[26] To this end the record shows full description and explanation of the stevedore's actions; in addition, defendant was permitted to cross-examine plaintiff and plaintiff's witnesses and to introduce evidence on its own about alternate methods of discharging a cargo of sugar. T 1–69 through 71, 1–81 through 90, 1–104 through 106, 1–122 through 124, 2–30

---

22. A case properly goes to the jury even if no facts are in dispute but there are conflicting inferences that may be drawn from them. *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.,* 427 F.2d 862, 868 (4th Cir. 1970).

23. Interrogatory No. 3(a) reads as follows:
Over what period of time, if any, would the plaintiff have worked gainfully in the future had it not been for the accident?
Interrogatory No. 5 reads as follows:
How much has the plaintiff lost in past earnings from the date of the accident until the present time as a result of the accident?

24. In accordance with the mandate of Rule 50(c) of the Federal Rules of Civil Procedure, I must rule on the motion for a new trial as well as the motion for judgment notwithstanding the verdict.

25. Whether the acts or omissions of the stevedore amounted to superseding cause thereby relieving the owner of liability has been discussed in the first part of this opinion. Suffice it to observe that superseding cause turns on the question of foreseeability (from hindsight) of the third party's acts and not on the negligence of those acts.
When defendant sought to introduce Occupational Safety and Health Act regulations (OSHA), 29 CFR § 1918.83 to establish the

stevedore's negligence, I refused to admit them inasmuch as I held that proof of the stevedore's negligence was not relevant. T 2–164 through 165. Whatever duty of care the OSHA regulations impose on the stevedore does not relieve a vessel owner of the duty of care the Act imposes on it. House Report at 4704. When other courts have dealt with the impact of the OSHA regulations on vessel owners, the question has been whether the regulations impose a duty of care on the vessel, not whether breach of the regulations by a stevedore relieves a vessel of liability. *See Bachtel v. Mammoth Bulk Carriers, Ltd.,* 605 F.2d 438 (9th Cir. 1979); *Rich, supra; Chavis v. Finnlines, Ltd., O/Y,* 576 F.2d 1072 (4th Cir. 1978); *Gay v. Ocean Transport and Trading Ltd.,* 546 F.2d 1233 (5th Cir. 1977); *Blackburn, supra.* It is interesting to note that were we to follow those circuits that hold that the regulations impose a duty on the *vessel,* it is likely defendant would have been in the position of arguing to prevent their admittance into evidence.

26. Not only was defendant not required to prove that the stevedore's acts were negligent, but such proof might have been confusing to the jury, since such proof of stevedore's negligence would not have relieved the shipowner of liability.

through 31, 2–75 through 78, 2–89 through 91.[27]

■ Defendant asserts that by submitting Interrogatory No. 2 to the jury, the stevedore's negligence was placed in issue even though defendant had not been permitted to introduce evidence as to that negligence. Interrogatory No. 2, as discussed above, went to the issue of the vessel owner's duty and whether that duty had shifted to a third party. In order to answer the interrogatory, the jury did not need to consider evidence of the stevedore's negligence. Even the conceded negligence of the stevedore would not necessarily bar recovery from the owner. Thus the ruling keeping out evidence of the stevedore's negligence and submission to the jury of Interrogatory No. 2 are not contradictory.

### 2. *Union Pension*

At the beginning of the trial the parties stipulated to the life expectancy and work life expectancy of a 64 year old male (age of plaintiff at date of accident) and a 66 year old male (age of plaintiff at time of trial). Defendant argued at trial that plaintiff would have retired at age 65, and therefore damages for wage loss should be cut off as of December 1977, plaintiff's 65th birthday. To this end, defendant introduced evidence as to the customary age of retirement in the longshoring industry. T 2–167 through 170. Defendant also elicited from plaintiff the fact that he had applied for and received a social security retirement pension not based on disability, T 1–132, before I sustained plaintiff's objection to further cross-examination on portions of plaintiff's pension application. T 1–132 through 136A; T 2–7 through 13.

■ It is proper to prove damages by introducing evidence of plaintiff's earnings at the time of the injury and of life and work life expectancy. In this respect, the jury was free to accept or reject this evidence and mold the verdict according to its view of the work life expectancy and salary of the plaintiff.

■ Plaintiff had applied for pensions after the accident and at a time when he was automatically eligible for a pension based on age without necessity of proving disability. After argument by counsel, I concluded that further cross-examination on the social security retirement pension and plaintiff's Union pension would be unduly prejudicial to plaintiff. T 1–135 through 136A, 2–7 through 13. I reaffirm that judgment. My reasons as then articulated seem to me sound on reflection:

I think that under 403, under Federal Rule of Evidence 403 it may possibly have some relevance, but I think that the prejudice so outweighs the probative value of it.

Here is a man who has been hurt and it is perfectly conceivable that he would contend that if he had not been hurt he would have continued to work for X number of years but once he got hurt he went on a, he thought, "Now that I am hurt it is time to retire," and I think that is all it proves.

Whereas I think the effect on the jury may very well be to persuade them that he didn't intend to continue to work; that he is not working because of disability but because he is receiving a retirement and I think that the prejudice outweighs the probative value of the evidence.

T 1–135 through 136.

### 3. *Contributory Negligence*

Defendant filed a Supplemental Motion for a New Trial three days after the filing of the Motion for Judgment Notwithstanding the Verdict or New Trial and within the ten day period mandated by Rule 50 of the Federal Rules of Civil Procedure. This last document is not actually a supplemental

---

27. Indeed defendant's expert witness, Mr. Keeler, was permitted to testify as to whether in his opinion the method used by the stevedore was improper. T 89 through 91. This testimony (whether the stevedore's methods were proper as distinct from what those methods were) was admitted as evidence on the question of plaintiff's contributory negligence. T 2–165. *See* discussion of contributory negligence, *infra*.

motion, but rather a supplement to the original motion in the form of an additional reason for a new trial. Defendant asserts I erred in failing to submit to the jury the issue of plaintiff's contributory negligence.

■■■ Although a defendant vessel owner cannot assert the contributory negligence of the stevedore to reduce a plaintiff longshoreman's recovery, *Edmonds, supra,* evidence of the contributory negligence of the plaintiff can be considered in mitigation of damages. *Edynak v. Atlantic Shipping, Inc. Cie. Chambon Maclovia S.A.,* 562 F.2d 215, 219 n.5 (3d Cir. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978).

Rules 49 and 51 of the Federal Rules of Civil Procedure bear on this issue. Rule 49 regarding special verdicts and interrogatories states in relevant part that if in giving instruction to the jury on answering interrogatories,

> the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury.

The rule goes further and says that as to such issues omitted findings in accord with the special verdict are to be implied.

Rule 51 in pertinent part states:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.[29]

Defendant did not note his objections on this issue either during the framing and presenting of the interrogatories to the jury or in response to the charge, and has therefore waived his objection. *Holloway v. J. B. Systems, Ltd.,* 609 F.2d 1069, at 1074 (3d Cir. 1979). The question remains whether in spite of the failure to object, the absence

of a charge on contributory negligence was so fundamental that it constitutes reversible error. *Herman v. Hess Oil Virgin Islands Corp.,* 524 F.2d 767, 772 n.12 and accompanying text (3d Cir. 1975); 5A Moore's Federal Practice § 51.04 at 51–9 (2d ed. 1979).

Defendant's expert, Mr. Keeler, testified as to a variety of tools that could have been used to discharge the cargo. This testimony was permitted as relevant to the issue of contributory negligence. T 2–78, 2–165. In most circumstances the question of contributory negligence by a longshoreman plaintiff, leading to a reduction of damages, is a question for the jury, *Lopez v. A/S D/S Svendborg,* 581 F.2d 319, 322 (2d Cir. 1978) and in this context the vessel owner is entitled to the most favorable reading of "all inferences which the evidence supports, even though contrary inferences might reasonably be drawn." *Chavis, supra,* 576 F.2d at 1083.

■■■ However, where defendant has not met its burden, that is, it has failed to introduce sufficient evidence for a jury reasonably to find in its favor, it would be error for a judge to instruct a jury on the issue "for it allows the jury to *speculate* that in some way plaintiff's own negligence may have caused [the injury]" (emphasis added). *Id.* at 1082. Unlike the situation in *Chavis,* in this case there was no credible evidence from which the jury could have concluded that use of the suggested alternative tools was feasible, and I so charged the jury:

> There have been suggestions of the use of a pick or of a hammer or of a pneumatic drill, but I have heard no evidence from anybody, I have heard argument but I have heard no evidence from anybody that any of those methods were feasible under the circumstances that there were here.

---

29. It should be noted that defendant not only did not object to the jury instructions in timely fashion, but in the supplement to his motion where he advances the omission of the contributory negligence charge (and interrogatory) as error, he fails to state the grounds for his objection in accordance with the rule.

T 3–60.[30] As a matter of law I conclude defendant has not made out a case of contributory negligence on the part of plaintiff. Thus defendant cannot prevail even under the fairness test principle that operates to mitigate the harsh effect of Rules 49 and 51.

For the foregoing reasons I deny defendant's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, and an order will be entered accordingly.

30. Mr. Keeler also testified about alternative methods of discharging the cargo, T 2–83 through 85, 2–90 through 91, as distinct from tools used by the longshoremen. The methods of discharging cargo that he described are the responsibility of the stevedore and not a person in plaintiff's capacity, and therefore are not relevant to the issue of plaintiff's contributory negligence, if any.