**Roger R. ICENOGLE, as Executor, of the Estate of Jack A. Campbell and Joan B. Campbell, Deceased, Plaintiff,**

v.

**OLYMPIC AIRWAYS, S. A., Defendant.**

**Nick NESTOPOULOS, as Administrator of the Estate of Ioanna P. Nestopoulos, Deceased, Plaintiff,**

v.

**OLYMPIC AIRWAYS, S. A., Defendant.**

Civ. A. Nos. 77–1982, 77–2148.

United States District Court, District of Columbia.

March 19, 1979.

Philip Silverman, Speiser, Krause & Madole, Washington, D. C., for plaintiffs.

Frederick L. Shreves, II, Hill, Betts & Nash, New York City, for defendant.

### MEMORANDUM

OBERDORFER, District Judge.

These are wrongful death actions for damages brought by the estates of a husband and a wife who were citizens of Wisconsin and the estate of a woman who was a citizen of New York. They all died in the crash of a commercial airplane while on a

domestic flight between two cities in Greece. The plane in which they were passengers was owned and operated as a common carrier by defendant, a Greek corporation. Defendant operates in the United States and has offices in various cities here; its stock is owned by the Government of Greece.

Issue was joined by consolidated complaints demanding a jury trial and by defendant's answers and motions to dismiss. Those pleadings challenged this court's jurisdiction as well as venue here. In the alternative, defendant moved to strike plaintiffs' demands for trial by jury on authority of the Foreign Sovereign Immunities Act of 1976, Pub.L. 94–583, 90 Stat. 2891 (codified at 28 U.S.C. §§ 1330, 1602–11 (1976) and amending 28 U.S.C. §§ 1332, 1391, 1441) ("Immunities Act"). Defendant has now abandoned its challenge to jurisdiction and venue and has admitted liability. For reasons stated below the court has denied the motion to strike the jury demand:

(1) The complaint correctly invoked this court's traditional diversity or "alienage" jurisdiction over this controversy between estates which are citizens of Wisconsin and a foreign corporation which is a citizen or subject of a foreign state. 28 U.S.C. § 1332(a)(2).

(2) The plaintiffs' demands obligated the court, exercising its jurisdiction under § 1332(a)(2), to try this wrongful death action to a jury. See *MacDonald v. Air Canada*, 439 F.2d 1042 (1st Cir. 1971); *Berner v. British Commonwealth Pacific Airlines Limited*, 346 F.2d 532 (2d Cir. 1965) *cert. den.* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966); *see also Moragne v. United States*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970); C. Wright, A. Miller & E. Cooper, 14 *Federal Practice and Procedure* § 3661.

(3) The Immunities Act affected neither this court's jurisdiction over the defendant foreign corporation, despite the Greek Government's ownership of its stock, nor the plaintiffs' constitutional rights to jury trials.

These conclusions rest initially upon the plain language of 28 U.S.C. § 1332(a)(2) as it was amended by the Immunities Act. Before 1976 that section provided that:

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds . . . $10,000 . . . and is between

(2) citizens of a State, and foreign states or citizens or subjects thereof . . . ."

The Immunities Act amended the section to delete its reference to "foreign states" as such. But the section, as amended, preserved the original diversity or alienage jurisdiction of district courts where the matter is between

(a) citizens of a State and citizens or subjects of a foreign state . . .

Before 1976 district courts freely exercised diversity or alienage jurisdiction over claims by United States citizens against foreign air carriers whose stock was owned by their governments, including the defendant here. See e. g., *Hammill v. Olympic Airways*, 398 F.Supp. 829 (D.D.C.1975). Moreover, federal courts honored demands for jury trials in cases involving air carriers owned by foreign governments presumably because the Seventh Amendment required it. See e. g., *MacDonald v. Air Canada, supra; Berner v. British Commonwealth Pacific Airlines Limited, supra.* That Amendment provides that:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." [1]

Defendant does not contest plaintiff's jury trial demand because of the statutory origin of wrongful death actions. For the actions here involve rights and remedies of the sort traditionally enforced in an action

---

1. For a recent reiteration of "the right of trial by jury in civil cases at common law" as "fundamental to our history and jurisprudence," *see Parklane Hosiery Company, Inc. v. Shore* and authorities there collected, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (Rehnquist, J., dissenting).

at law rather than in equity or admiralty. *See Curtis v. Loether*, 415 U.S. 189, 193–94, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *see also Moragne v. United States*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

Defendant's contention is based on the Immunities Act and must be resolved in plaintiff's favor. The Immunities Act does not, by its terms, eliminate this court's authority over defendant as a citizen or subject of a foreign state under 28 U.S.C. § 1332(a)(2). In the absence of a clearer signal from Congress, the court is not persuaded that the Immunities Act was intended to do away with a jury trial in such a case.

This conclusion is not altered by the fact that the Immunities Act confers upon district courts new special jurisdiction in non-jury civil actions against a foreign state and defines "foreign state" to include, for some purposes, a foreign corporation, like defendant, whose stock is owned by a foreign state.

Chapter 97, Section 1603 of Title 28 provides that *"For purposes of this chapter —*

(a) A 'foreign state' . . . includes . . . any entity . . . which is a separate legal person, corporate or otherwise . . . a majority of whose shares . . . is owned by a foreign state . . . which is neither a citizen of a State of the United States . . . nor created under the laws of any third country."* (Emphasis added)

New Section 1330 of Title 28 U.S.C., Ch. 85, captioned "Actions Against Foreign States" and incorporated into the Code by the Immunities Act, provides in relevant part that:

"The district courts shall have original jurisdiction without regard to amount in controversy of any non-jury civil action against a foreign state *as defined in section 1603(a)* of this title or to any claim .- . . with respect to which the foreign state is not entitled to immunity. . . ." (Emphasis added)

"Foreign state" in Section 1330 is thus specifically defined by cross-reference to Section 1603 to include a corporation like defendant here. There is no parallel cross-reference from Section 1332(a)(2) to Section 1603. Since Section 1603 is limited by its terms to Chapter 97, it does not affect Section 1332(a)(2) because that section appears in Chapter 85 and contains no cross-reference to Section 1603.

Thus, it is apparent from reading sections 1330 and 1603 that neither redefines "citizens or subjects of a foreign state" as those terms appear in Section 1332(a)(2) (before and after 1976) and that those terms have not become superfluous to Section 1332(a)(2). Rather, one apparent effect of the language of the new sections added by the Immunities Act is simply to subject some foreign corporations owned by their governments to suit in a federal court under both Section 1330 and Section 1332(a)(2). Thus, in addition to its pre-existing right to sue and its liability to be sued in federal court where $10,000 or more is in controversy, a foreign government-owned corporation like defendant is now also subject to federal court suit in a nonjury civil action without regard to the amount in controversy.

This construction of a district court's contemporary jurisdiction under Section 1332(a)(2) is further confirmed by close comparison of that section before and after 1976 in the context of the doctrine of sovereign immunity. Before 1976, Section 1332(a)(2) gave district courts original jurisdiction over "foreign states and citizens or subjects of such states." Over the years, the courts and the Executive Branch, through the State Department, carved exceptions out of this grant of jurisdiction in deference to principles of international law which immunized foreign sovereigns from suit in the courts of another sovereign.[2]

Generally, courts, acting independently or responding to State Department suggestions, accorded sovereign immunity to foreign states and their political subdivisions

---

2. *See generally* von Mehren, "The Foreign Sovereign Immunities Act of 1976," 17 Columbia Journal of Transnational Law 33 (1977) and authorities there collected.

and instrumentalities, but not to their commercial instrumentalities, particularly those functioning as separate corporate entities. Extensive, although not definitive, research has disclosed only one case indicating that before 1976 any foreign corporate common carrier whose stock was owned by its government enjoyed sovereign immunity in the courts of the United States.[3] On the other hand, plaintiff has collected a score or so of reported cases where district courts exercised Section 1332(a)(2) jurisdiction over foreign government-owned corporations operating as common carriers by air. None of these cases indicate any apparent State Department suggestion of immunity, formal or informal.[4] Courts and commentators may not have focused on the question of whether these corporations were sued before 1976 under Section 1332(a)(2) as "foreign states" or as "citizens or subjects of such a state." On reflection in the context of the history of sovereign immunity, it seems apparent that these common carrier corporations owned by foreign governments were sued or were suable as "citizens or subjects" and not as "foreign states." Therefore, the deletion of "foreign states" from Section 1332(a)(2) cannot by itself limit district court jurisdiction of foreign government-owned corporations serving as common carriers to the new authority created by Section 1330.[5] If the Foreign Sovereign Immunities Act were meant to deny jury trials to U.S. citizens suing "citizens or

subjects of foreign states" which are government corporations, new Section 1330 with its cross-reference to Section 1603 furnished a fresh and ready model to accomplish that.[6] It is therefore a fair reading of the Immunities Act that whatever effect it had upon the jury trial right of U.S. citizens suing a foreign sovereign or its political subdivisions and instrumentalities as such, it did not diminish the jury trial right of U.S. citizens suing foreign government-owned commercial corporations under 28 U.S.C. § 1332(a)(2).

It may be that Congress has attempted to bar jury trials in cases removed to federal court from a state court by a "foreign state," including a foreign government-owned corporation.[7] Thus, the Congress has stated categorically that

". . . upon removal the action shall be tried by the court without jury."

But there is no such commanding language in the Immunities Act which purports to bar a jury trial in an original district court action against a foreign government-owned air carrier sued for damages pursuant to Section 1332(a)(2). Thus, the serious constitutional question which might be presented if this case had been removed here from the District of Columbia Superior Court is not raised by this original action. *See Lorrillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

---

3. *Oliver American Trading Co. v. Mexico*, 5 F.2d 659 (2d Cir. 1924), *cert. den.* 267 U.S. 596, 45 S.Ct. 352, 69 L.Ed. 805. *Compare Berizzi Bros. Co. v. S.S. Pesaro*, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088 (1926); *Alfred Lord Dunhill of London v. Cuba*, 425 U.S. 682, 699, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1966) and *Mexico v. Hoffman*, 324 U.S. 30, 65 S.Ct. 530, 89 L.Ed. 729 (1945).

4. Indeed, the Civil Aeronautics Board requires a foreign air carrier to waive any sovereign immunity it might claim up to $75,000 before it is privileged to operate in the United States. *See* Agreement CAB 18900, approved by CAB Order E–23680, May 13, 1966 (Docket 17325); 14 C.F.R. 221.175–176.

5. In addition, as a matter of grammar, the broader undefined term "foreign states" as now used in Section 1332(a)(2) modifies and

stands in contrast to "subjects and citizens." Thus, the term "foreign state" as now used in Section 1332(a)(2) does not encompass a foreign government-owned corporation; such a corporation cannot have "citizens or subjects."

6. *And compare* 28 U.S.C. § 2402, providing that in actions against the United States under the Federal Tort Claims Act:

"Any action against the United States . . . shall be tried by the court without a jury . . . ."

7. New Section 1441 of Title 28 provides that:

"any civil action brought in State court against a foreign state as defined in section 1603 . . . may be removed by the foreign state to the district court . . . . Upon removal the action shall be tried to the court without jury."

In construing the statute without precipitating a constitutional issue, the court has not overlooked statements in the legislative history of the Immunities Act; for example, that:

> "Since jurisdiction in actions against *foreign states* is *comprehensively treated* by the new section 1330, a similar jurisdictional basis under section 1332 becomes *superfluous.*"

H.R.Rep.No.94–1487, 94th Cong., 2d Sess. at 14, 1976 U.S.Code Cong. & Admin.News at 6604, 6613. (Emphasis added) It is possible to conclude from this statement that the Committee thought that the Immunities Act eliminated Section 1332(a)(2)·jurisdiction over "foreign states" and over any "citizen or subject" included in the definition of a foreign state by Section 1603. But it is also "fairly possible" to read the Report differently. *Compare Lorrillard v. Pons, ibid.* For the Committee Report references to "foreign state" may well be intended to refer to foreign states in the sovereign and political sense rather than to the special meaning of "foreign state" defined in Section 1603. The court declines to endorse the possible, but not necessary, construction of the Committee Report that would deprive plaintiffs of their right to a jury trial, particularly since it is the statute and not the Report which must control.

In reaching this conclusion, the Court is mindful of its duty to construe acts of Congress, if fairly possible, to avoid unnecessary constitutional adjudication. *See Lorrillard v. Pons, supra.* A suit for wrongful death is a legal claim, entitled to a jury trial under the Seventh Amendment. *Compare Curtis v. Loether,* 415 U.S. 189, 193–94, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) and *Moragne v. United States,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). It may be that in 1791 the doctrine of absolute sovereign immunity might have barred suit against a foreign sovereign acting in a commercial capacity, *see, e. g., Berizzi Bros. Co. v. S.S. Pesaro,* 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088 (1926), even if the sovereign acted through a corporate entity, *see Oliver American Trading Co. v. Mexico,* 5 F.2d 659 (2d Cir. 1924). It is nevertheless an open question whether, having removed the foreign sovereign's immunity from suit under the circumstances presented here,[8] Congress may constitutionally provide that legal claims are not to be tried to a jury. While Congress may not be obliged to allow suit in federal court against a foreign sovereign at all, once Congress has decided to give federal courts jurisdiction to hear such suits it may not restrict the exercise of that jurisdiction in an unconstitutional manner. *See Anglo-American Provision Company v. Davis Provision Company, No. 1,* 191 U.S. 373, 374–75, 24 S.Ct. 92, 48 L.Ed. 225 (1903) and *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); *see also Angel v. Bullington,* 330 U.S. 183, 188, 67 S.Ct. 657, 91 L.Ed. 832 (1947). *But compare* C. Wright, E. Cooper & A. Miller, 14 *Federal Practice and Procedure* §§ 3662 (1977 Supp.), 3654; *U. S. v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The statutory scheme adopted by Congress addressing federal jurisdiction of foreign sovereigns must, as in any other area, conform to the Constitution. *See also McKnett v. St. Louis & S.F. Ry. Co.,* 292 U.S. 230, 233, 54 S.Ct. 690, 78 L.Ed. 1227 (1934). Accordingly, there is a serious question whether Congress, having abolished a foreign sovereign's immunity under certain conditions, may constitutionally bar trial of legal (as distinguished from equity and admiralty) actions against the foreign sovereign. Absent a clearer directive from Congress than that provided here the court will not choose a construction of the Immunities Act that would bring into serious question its constitutionality under the Seventh Amendment. *See Lorrillard v. Pons, supra.*

Additionally, the immunity of a foreign sovereign from local jurisdiction is not a constitutional principle, but a flexible matter of comity between sovereign states. The right to a jury trial in suits at common law guaranteed by the Seventh Amendment, in contrast, has been described as "the very palladium of free government".

---

8. *See* 28 U.S.C. § 1605(a)(2).

*Galloway v. United States,* 319 U.S. 372, 398, 63 S.Ct. 1077, 1090–1091, 87 L.Ed. 1458 (1943) (Black, J., dissenting). It is a "right so fundamental and sacred to the citizen . . . [that it] should be jealously guarded by the courts." *Jacob v. New York,* 315 U.S. 752, 753, 62 S.Ct. 854, 86 L.Ed. 1166 (1942). *And see Parklane Hosiery Company, Inc., supra,* at n. 1. This difference provides an additional, substantial reason for adopting the Court's construction of the Immunities Act.

The construction adopted by the court should also further one of the apparent purposes of the Immunities Act: to equate the treatment of foreign states and their instrumentalities in our federal courts with that accorded to the United States and its instrumentalities. *See* von Mehren, "The Foreign Sovereign Immunities Act of 1976," 17 Columbia Journal of Transnational Law 33, 45 f. (1978). Commercial corporations owned by the United States have traditionally been subject to suit in tort and contract.[9] Actions against such corporations are triable by juries in district courts,

rather than in non-jury proceedings in the Court of Claims.[10] The Federal Tort Claims Act exempts from district court jury trial only government corporations "primarily acting as, instrumentalities or agencies of the United States." 28 U.S.C. § 2671.[11] The parties have not cited, and research has not discovered, any decision barring jury trial of a legal claim against a corporate common carrier, the stock of which belongs to the United States. Congressional policy concerning jury trials of claims involving common carriers in which the United States has a substantial financial interest and enjoys substantial management control is evidenced by the National Rail Passenger Service Act, creating the National Railroad Passenger Corporation (AMTRAK). *See* Rail Passenger Service Act of 1970, Pub.L. 91–518, Oct. 30, 1970, 84 Stat. 1328; 45 U.S.C. § 501 *et seq.* Although the corporate form of AMTRAK is complex, the result is clear: jury trials are afforded.[12] The construction of the Immunities Act which permits jury trials of tort claims against foreign carriers owned by foreign govern-

---

9. *See, e.g., Bank of the United States v. Planters' Bank of Georgia,* 9 Wheat (22 U.S.) 904, 6 L.Ed. 244 (1824); *Sloan Shipyards Corporation v. U.S.S.B. Emergency Fleet Corporation,* 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762 (1922); *Olson v. United States Spruce Production Corporation,* 267 U.S. 462, 45 S.Ct. 357, 69 L.Ed. 738 (1925); *Keifer & Keifer v. R.F.C.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); *F.H.A. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). *Compare Federal Land Bank v. Priddy,* 295 U.S. 229, 231, 55 S.Ct. 705, 79 L.Ed. 1408 (1935); *Panama Canal Co. v. Grace Line, Inc.,* 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958).

10. *See Sloan Shipyards Corporation, supra; Panama R. Co. v. Curran,* 256 F. 768 (5th Cir. 1919). *See also Panama Railroad Company v. Minnix,* 282 F. 47 (5th Cir. 1922); *F.H.A. v. Burr, supra,* 309 U.S. at 245, 60 S.Ct. 488. *Compare Filbin Corporation v. United States,* 265 F. 354 (E.D.S.C.1920); *United States v. McGrane,* 270 F. 761, 764 (3rd Cir. 1921).

11. *Compare United States v. Strang,* 254 U.S. 491, 41 S.Ct. 165, 65 L.Ed. 368 (1921) *with Federal Land Bank v. Priddy, supra; Panama Canal Co. v. Grace Line, Inc., supra; Safeway Portland E.F.C.U. v. Federal Dep. Ins. Corp.,* 506 F.2d 1213 (9th Cir. 1974).

12. AMTRAK is a mixed-ownership government corporation designated a common carrier by railroad. 31 U.S.C. § 856; 45 U.S.C. § 545(a). AMTRAK is supported in part by federal appropriations and by loan funds guaranteed by the Secretary of Transportation, which constitute general obligations of the United States. 45 U.S.C. §§ 601(a), 602(a)–(b). The majority of AMTRAK's present directors are appointed by the President of the United States with the advice and consent of the Senate. 45 U.S.C. § 543(a)(1). The Rail Passenger Service Act specifically provides that AMTRAK will not be an agency or establishment of the United States government. 45 U.S.C. § 541. There is therefore no limitation upon the jury trial of legal claims involving AMTRAK and such claims are commonly tried before a jury. *See, e. g., Christian v. National Railroad Passenger Corporation,* C.A. No. 77–1188 (D.D.C.).

*See generally* Adams, "The National Railroad Passenger Corporation—A Modern Hybrid Neither Private nor Public," 31 Bus.L. 601 (1976).

*See also* 28 U.S.C. § 2680, exempting the Tennessee Valley Authority from the limitations of the Federal Tort Claims Act. *Compare Fred J. Early, Sr., Co., Inc., Massman Construction Co.* and *WAMATA v. Wagner,* 391 A.2d 252 (App.D.C.1978); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* —— U.S. ——, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

ments would thus equate their status to U.S. government corporations and further this broad purpose of the Act.

Thus, in light of the plain language of the relevant provisions of the Immunities Act, Congress' apparent desire that federal courts treat foreign sovereigns similarly to the way the domestic sovereign is treated and the serious constitutional questions which would be presented by a different construction, the court has concluded that the Immunities Act does not require striking plaintiffs' jury demand and defendant's motion to that effect has been denied.