Calvin REX

v.

CIA. PERVANA DE VAPORES, S.A.

Civ. A. No. 78–3694.

United States District Court,
E. D. Pennsylvania.

June 24, 1980.

Charles Sovel, Freedman & Lorry, Philadelphia, Pa., for plaintiff.

E. Alfred Smith, Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

## MEMORANDUM

CAHN, District Judge.

### I. *FACTS*

Plaintiff is a longshoreman. On August 14, 1978, plaintiff was employed by Northern Shipping Co. (a stevedore) and was engaged in discharging cargo from the M/V Chocano. M/V Chocano is a merchant vessel owned and operated by the defendant, Cia. Pervana De Vapores, S.A. During the course of his work, plaintiff was injured. Alleging that his injuries were caused by the negligence of defendant, plaintiff instituted the instant action for damages pursuant to § 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Plaintiff's complaint contained a demand for a jury trial. Jurisdiction over plaintiff's action in this court was allegedly based on 28 U.S.C. § 1332, com-

monly called diversity jurisdiction. In brief and argument plaintiff's counsel also asserted jurisdiction under 28 U.S.C. §§ 1330 and 1331.

M/V Chocano is an ocean-going vessel engaged in foreign commerce and is registered in Peru. Defendant is a Peruvian corporation all of whose stock is owned by the sovereign State of Peru. Defendant alleges that, as an "agen[t] or instrumentality of a foreign state" as defined in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602, 1603(b)(2), jurisdiction in this court may only be based on 28 U.S.C. § 1330(a). Since jurisdiction under 28 U.S.C. § 1330(a) is limited to "nonjury" civil actions, defendant has made a motion to strike plaintiff's demand for a jury trial. That motion, and the question of statutory interpretation which it presents, is the issue before the court.

## II. *BACKGROUND*

As a doctrine of international law, foreign sovereigns have enjoyed a limited immunity from suit in United States courts. Courts have traditionally deferred to the practice and policies of the State Department of the federal government in deciding on the application of the immunity doctrine to a foreign sovereign. *See Alfred Dunhill of London, Inc. v. Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976); *Mexico v. Hoffman*, 324 U.S. 30, 65 S.Ct. 530, 89 L.Ed. 1014 (1945); H.R.Rep.No.94–1487, U.S.Code Cong. & Admin.News 1976, p. 6604, 122 Cong.Rec. 6604 (1976) (hereinafter House Report). This system presented various practical problems in modern times, and after years of deliberation and consultation with the State Department, the Office of Foreign Litigation of the Justice Department, and the private bar, Congress formulated a comprehensive new approach to procedural issues involving suits against a foreign sovereign. The result was the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, *et seq.* (hereinafter the FSIA).

The main purpose of the FSIA was to confer on the United States District Courts the authority to determine when the doctrine of sovereign immunity is to be invoked to bar an action against a foreign sovereign and to provide standards for that determination. *See* 28 U.S.C. § 1602; House Report. In addition the FSIA sought to provide comprehensive guidelines for attachments, service of process, jurisdiction, and other procedural problems related to suits against foreign sovereigns. In doing so the FSIA amended and added to the sections of Title 28, Chapter 95 of the United States Code which set forth the jurisdiction of the United States District Courts. Therein lies the crux of the present problem.

## A. STATUTORY CHANGES UNDER THE FSIA

Prior to the FSIA, 28 U.S.C. § 1332(a) read:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties;

The FSIA amended § 1332 as follows:

SEC. 3 That section 1332 of title 28, United States Code, is amended by striking subsections (a)(2) and (3) and substituting in their place the following:

'(2) citizens of a State and citizens or subjects of a foreign state;

'(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

'(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or different States.'

In addition the FSIA inserted the following new section into Chapter 95 of Title 28:

§ 1330. Actions against foreign states

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

The rest of the FSIA was inserted into Title 28 as a new chapter, Chapter 97, entitled "Jurisdictional Immunities of Foreign States." Section 1603 of the new chapter provided:

§ 1603. Definitions

For purposes of this chapter—

(a) A 'foreign state', except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An 'agency or instrumentality of a foreign state' means any entity—

(1) which is a separate legal person, corporation or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

## III. *POSITIONS OF THE PARTIES*

Defendant's position is that the FSIA comprehensively codified those instances in which jurisdiction over a foreign sovereign could be maintained in the federal courts. According to defendant, the FSIA was the result of years of intense effort, and its content should not be viewed as a product of hasty legislative work. Defendant points out that the FSIA accomplished three things simultaneously: first, it eliminated from 28 U.S.C. § 1332 district court jurisdiction over civil suits to be tried by a jury between a citizen and a foreign state as a defendant; second, it created district court jurisdiction over nonjury civil suits between a citizen and a foreign state as a defendant in new section 28 U.S.C. § 1330; third, it included in the definition of a foreign state a corporation like the defendant which is controlled by the former statute and otherwise meets the tests of 28 U.S.C. § 1603(b). Defendant argues that the FSIA unequivocally took away from this court jurisdiction over a jury trial in the instant case, and that this court has jurisdiction based on § 1330 only if the demand for a jury trial is stricken from the complaint.

To reinforce its position, defendant points to the legislative history of the FSIA. In H.R.Rep.No.94–1487, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 6604 (hereinafter House Report), which accompanied the FSIA to both the House and Senate floors and represented years of committee work, it was stated:

The purpose of the proposed legislation, as amended, is to provide when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States . . . .

.   .   .   .   .

SEC. 2. JURISDICTION IN ACTIONS AGAINST FOREIGN STATES

Section 2 of the bill adds a new section 1330 to title 28 of the United States Code, and provides for subject matter and personal jurisdiction of U. S. district courts over foreign states and their political subdivisions, agencies and instrumentalities. Section 1330 provides a comprehensive jurisdictional scheme in cases involving foreign states.

.   .   .   .   .

As in suits against the U. S. Government, jury trials are excluded. See 28 U.S.C. 2402.

.   .   .   .   .

SEC. 3. DIVERSITY JURISDICTION AS TO FOREIGN STATES

Section 3 of the bill amends those provisions of 28 U.S.C. 1332 which relate to

diversity jurisdiction of U. S. district courts over foreign states. Since jurisdiction in actions against foreign states is comprehensively treated by the new section 1330, a similar jurisdictional basis under section 1332 becomes superfluous. The amendment deletes references to 'foreign states' now found in paragraphs (2) and (3) of 28 U.S.C. 1332(a), and adds a new paragraph (4) to provide for diversity jurisdiction in actions brought by a foreign state as plaintiff. These changes would not affect the applicability of section 1332 to entities that are both owned by a foreign state and are also citizens of a state of the United States as defined in 28 U.S.C. 1332(c) and (d). See analysis to section 1603(b).

Defendant argues that this court cannot ignore the clear intent of Congress given Congress's constitutional power to establish the jurisdiction of the federal district court under Article III of the United States Constitution and Congress's power to control the relations of the United States with foreign states under Article I, Section 8, of the United States Constitution.

Plaintiff argues that defendant's construction of the statute is erroneous, and second that such an interpretation would place the statute in violation of the Seventh Amendment to the Constitution which preserves the right to a jury trial as known at common law.

Plaintiff's position is that, even though Congress may grant or deny jurisdiction in this case to the district court, if Congress grants that jurisdiction it cannot be done in an unconstitutional manner. Therefore plaintiff argues that I must either declare the statute unconstitutional because it violates the Seventh Amendment or in the alternative construe the statute as granting a jury trial so as to avoid the constitutional issue.

Plaintiff urges that such jurisdiction can be based on 28 U.S.C. § 1332 (diversity jurisdiction) or § 1331 (federal question jurisdiction). In addition, plaintiff suggests that 28 U.S.C. § 1330 can be interpreted to eliminate a jury trial only from that aspect of the case involving a determination of the application of sovereign immunity.

## IV. A SERIOUS CONSTITUTIONAL ISSUE IS PRESENTED IF THE FSIA IS INTERPRETED TO DENY PLAINTIFF A RIGHT TO A JURY TRIAL IN THE INSTANT CASE.

### A. THE SEVENTH AMENDMENT

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed Twenty Dollars, the right of jury trial shall be preserved . . . ." The guidelines to interpreting this Amendment were set forth in *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). In that case the court held that the Seventh Amendment of the Constitution entitled. either party to demand a jury trial in an action for damages based on a section of the Civil Rights Act of 1968, which authorized private plaintiffs to bring civil actions to redress violations of that Act's fair housing provisions. The Court stated:

Although the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, it has long been settled that the right extends beyond the common-law forms of action recognized at that time. Mr. Justice Story established the basic principle in 1830:

'The phrase "common law," found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence. . . . By *common law*, [the Framers of the Amendment] meant . . . not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered . . . .. In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form which they may assume to settle legal rights.'

*Parsons v. Bedford,* 3 Pet. 433, 446–447 [7 L.Ed. 732] (1830) (emphasis in original).

*Curtis v. Loether,* 415 U.S. 189, 193, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974).

[W]hen Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.

415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).

A damages action under the statute sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at law. More important, the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law.

415 U.S. 189, 195–96, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974) (footnotes omitted). Therefore the Court ruled that there was a right to jury trial under the statute guaranteed by the Seventh Amendment.

In *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), the Court considered whether the Seventh Amendment required the interpretation of a District of Columbia statute to allow a jury trial. The Court said:

Whether or not a close equivalent to § 16–1501 existed in England in 1791 is irrelevant for Seventh Amendment purposes, for that Amendment requires trial by jury in actions unheard of at common law, provided that the action involves

rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty. See *Curtis v. Loether, supra,* 195 [94 S.Ct. 1008].

416 U.S. 363, 375, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198 (1974).[1]

■ The Supreme Court's guidelines are quite clear—I must look to the nature of the action before me to determine if the right to a jury trial is guaranteed by the Seventh Amendment.[2]

## B. THE NATURE OF AN ACTION UNDER SECTION 5(b) OF THE LONGSHOREMAN'S AND HARBOR WORKER'S COMPENSATION ACT

In 1972 Congress amended the Longshoreman's and Harbor Worker's Compensation Act of 1927 (LHWCA), 33 U.S.C. § 901–50, fundamentally changing the basis for a longshoreman's action against a vessel owner. Under the amended statute a vessel owner would no longer be strictly liable for a longshoreman's injuries incurred while working on its ship under theories of unseaworthiness, nondelegable duty, or for a stevedore's negligence under a theory of *respondeat superior.* Additionally an owner would no longer have an action against a stevedore for indemnification. Instead, an owner would be liable to an injured longshoreman only for its own negligence which proximately caused the injury. *Rich v. U. S. Lines,* 596 F.2d 541, 545 (3d Cir. 1979); *McCarthy v. Silver Bulk Shipping, Ltd.,* 487 F.Supp. 1021 at 1024 (E.D.Pa.1980). As Chief Judge Lord has opined, "[i]n short, under the Act as amended, a longshoreman can bring suit against a vessel owner and only for the owner's negligence." *McCarthy v. Silver Bulk Shipping Ltd., supra,* at 1024. The LHWCA imposes the same duty

---

1. The Court has distinguished cases where a government agency enforces a public right. That is not the situation presented by this case. See *Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Commission,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977).

2. The Seventh Amendment states:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

to use reasonable care that would be applicable to a land-based business, *Griffith v. Wheeling-Pittsburgh Steel Corp.*, 610 F.2d 116, 125 (3d Cir. 1979), and where appropriate the trial court is instructed to look to the Restatement (Second) of Torts for guidance in applying the LHWCA. *Rich v. U. S. Lines Inc.*, 596 F.2d 541 (3d Cir. 1979); *Hurst v. Triad Shipping Co.*, 554 F.2d 1237 (3d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

■ In effect the action in the instant case is in the form of a traditional tort action at law.[3] If the FSIA clearly deprived plaintiff of a jury trial it would appear that I would be required to declare it unconstitutional.

Defendant, and the United States as intervenor,[4] argue that there is no difficult question presented under the Seventh Amendment. They argue that at common law no action against a sovereign existed, and that when a sovereign consents to be sued the sovereign may do so in a nonjury form. As the Court of Appeals for the Third Circuit has stated:

(1) 'The Government cannot be sued, except with its own consent. *It can declare in what court it may be sued, and prescribe the forms of pleadings and the rules of practice to be observed in such suits.* It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. \* \* \* If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the Government to the exercise of the privilege. Nothing more need be said on this subject.' *McElrath v. United States*, 102 U.S. 426, 440, 26 L.Ed. 189 (1880). (emphasis supplied)

(2) The grant of jurisdiction by the sovereign is in aid of determining the method of trial in the absence of an express provision. *United States v. Pfitsch*, 256 U.S. 547, 41 S.Ct. 569, 65 L.Ed. 1084 (1921); 5 Moore, Federal Practice ¶ 38.31(2) at 234 (2d ed. 1964).

*Collins v. Government of Virgin Islands*, 366 F.2d 279 (3d Cir. 1966), *cert. denied*, 386 U.S. 958, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967) (emphasis in original). Defendant argues under these principles, as in suits against the United States under the Tucker Act or Federal Tort Claims Act, a jury trial is not a matter of right in a case against a sovereign. *See Glidden v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671.

■ However, in the instant case no sovereign has consented to any suit. Instead, the Congress of the United States has adopted the so called "restrictive theory" of sovereign immunity as a principle of International Law. *See Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1975); House Report. The FSIA directs me not to determine if Peru has consented to suit in this case, but impels me to hold that no sovereign immunity exists in the instant case.[5]

---

3. The nature of the substantive basis of the action under § 905(b) should not be confused with the fact that the constitutional basis of the LHWCA is the admiralty jurisdiction in Article III of the Constitution. *See Hurst v. Triad Shipping Co.*, 554 F.2d 137 (3d Cir. 1977).

4. Since plaintiff raised the issue of the constitutionality of the Foreign Sovereign Immunities Act as defendant asked us to construe it, the United States was notified pursuant to 28 U.S.C. § 2403(a), and the United States exercised its right to intervene thereunder. I was informed by the Department of Justice that they had not been given notice or opportunity to intervene in any case prior to this one involving the questions here at issue. *See* Brief of Intervenor United States at 26, n.11.

5. It might be possible to develop a theory which could apply the concepts of *Collins v. Government of Virgin Islands, supra,* to the instant case. One could argue that foreign governments and corporations controlled by them are only subject to suit in the United States by consent. By entering the territory of the United States, these governmental entities constructively consent to suit under the FSIA, and they do so only in the nonjury forum provided for in the FSIA.

This theory would be deficient in at least two respects. First, such a theory is contrary to the restrictive theory of sovereign immunity which has been the law in this country for over fifty years and is embodied in the FSIA. *See* House Report. Under that restrictive theory there is no need for the consent of foreign governmental entities to subject them to suits arising from

Thus, I proceed in this action not on the assumption that sovereign immunity has been waived, but that it does not exist. Congress has granted a substantive right to sue a foreign sovereign in this case, which it admittedly could have denied. *See Alfred Dunhill v. Cuba, supra.* However, once Congress grants that right, combining the LHWCA and the FSIA, to sue this defendant in a negligence action, Congress cannot grant that right in violation of the Seventh Amendment. *See Icenogle v. Olympic Airways,* 82 F.R.D. 36, 40 and citations therein (D.D.C.1979).

■ Though I do not dismiss defendant's argument, I do not think it has the clear applicability defendant believes. I hold that the instant case presents a sufficiently difficult constitutional issue to invoke the long-established doctrine that a court should construe a statute, if possible, so as to avoid a constitutional issue.[6]

It is, of course, a ' "cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided." ' *United States v. Thir-*

*ty-seven Photographs,* 402 U.S. 363, 369 [91 S.Ct. 1400, 1404, 28 L.Ed.2d 822] (1971).

*Pernell v. Southall Realty,* 416 U.S. 363, 365, 94 S.Ct. 1723, 1724, 39 L.Ed.2d 260 (1974).

Therefore I must turn to the question of whether there is any statutory basis for jurisdiction over a jury trial in this case.[7]

## V. JURISDICTION OVER THE INSTANT CASE EXISTS UNDER 28 U.S.C. § 1332

Defendant argues that we should not torture by construction the words of the FSIA which was the product of long and careful deliberation, as we might to deal with inconsistencies in hastily drawn legislation. This very argument works against the defendant. If Congress so clearly intended to eliminate the jury trial in the instant case, then I find it hard to understand why glaring ambiguities were left on the face of the statute as enacted.

■ The FSIA created a new chapter of Title 28 and amended sections of an existing chapter of the United States Code.

their commercial activities. Additionally, given the ambiguities in the statute noted later in this opinion, it cannot be said that constructive consent would only be to a nonjury trial while 28 U.S.C. §§ 1331, 1332 and other statutes noted below remain the law of the United States. As long as the statute remains ambiguous on the matter of jury trials, it cannot be said that constructive consent to suit is unambiguously given only for a nonjury forum.

6. Even if it were held that Congress can deprive the right to a jury trial because a sovereign would have been immune to suit at common law in 1791, there is still a difficult constitutional question. This defendant is not a traditional foreign sovereign. It is only a foreign sovereign by effect of the FSIA. There is a dearth of cases prior to 1791 defining the status of commercial corporations a majority of whose stock is owned by a foreign government. Such creatures were rare at that time. Even if the treatment of foreign sovereign governments was clear at common law, the treatment of this corporate hybrid was not.

7. I note that the doctrine of avoiding a constitutional question has disturbing implications here. I am engaged in interpreting the jurisdiction granted to my court by Congress under Article III of the Constitution. The power to

establish the jurisdiction of this court is specifically given to Congress in the Constitution. It may be that in avoiding a constitutional issue under the Seventh Amendment I engage in creating a constitutional issue under Article III. Surely, if Congress had unequivocally stated that this court has no jurisdiction over a jury trial in this case, I could not create my own jurisdiction just to avoid a constitutional issue. It could be argued, therefore, that I should not invoke the avoidance doctrine.

However, every Congressional enactment must stem from some power granted Congress under the Constitution. All powers not granted the federal government are reserved to the states. Every time the doctrine of avoidance is invoked in interpretation of a statute, there are issues raised regarding the separation of powers, that the court involves itself in "legislating" contrary to Congress' intent, in a field where the power to legislate is specifically given to Congress in the Constitution. If this was enough of a countervailing consideration to stop courts from avoiding constitutional issues in interpreting a statute, there could be no such doctrine. Such countervailing problems must arise in every case where the doctrine is invoked.

First, the FSIA stated that "chapter 85 . . . is amended by inserting" § 1330. Then the FSIA amended § 1332 to remove jurisdiction between a citizen of a state and a foreign state, but specifically retained jurisdiction in that section over suits between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Then the FSIA stated that "title 28 . . . is amended by inserting after chapter 95 the following new chapter," which was Chapter 97. It is in Chapter 97 that the definition of a "foreign state" is found, and it is specifically limited to that chapter. *See* p. 462, *infra*. Therefore a "separate legal person," corporate or otherwise, whose controlling shares may be owned by a foreign state is not expressly precluded by the statute from being a citizen or subject of a foreign state for purposes of 28 U.S.C. § 1332. If such an exclusion is read into the statute, it must be implied, for it does not appear on the face of the statute. I choose not to make such an implication when to do so would deprive plaintiff of a jury trial. I agree with the other judges who have found jurisdiction under § 1332 in cases such as the instant action.[8]

---

8. Three judges previously addressing the issue have held that jurisdiction over a jury trial in cases such as the instant case can be predicated upon 28 U.S.C. § 1332. *Houston v. Murmansk Shipping Co.*, No. K–78–1373 (D.Md. May 23, 1980); *Lonon v. Companhia De Navegacao Lloyd Basileiro*, 85 F.R.D. 71 (E.D.Pa. 1979); *Icenogle v. Olympic Airways, S.A.*, 82 F.R.D. 36 (D.D.C.1979). Two cases brought to my attention seem to hold that a jury trial is not provided for in cases such as the instant case. However, in those cases jurisdiction was only alleged on 28 U.S.C. § 1330, and the issue was not central to the case. *Outboard Marine Corp. v. Pezetel*, 461 F.Supp. 384, 396 (D.Del. 1978); *East Europe International Sales Corp. v. Terra*, 467 F.Supp. 383 (S.D.N.Y.1978). One judge has held that depriving the right to a jury trial against foreign sovereigns which are removed to the district court under 28 U.S.C. § 1441(d) is not unconstitutional. *Williams v. The Shipping Corporation of India*, 489 F.Supp. 526 (E.D.Va.1980). Another judge has ruled that no right to a jury trial exists, without consideration of any constitutional issues. *Cululu v. M/V Odessa*, No. 78–3344 (E.D.La. April 28, 1980).

## VI. JURISDICTION OVER THE INSTANT ACTION IS GRANTED BY 28 U.S.C. § 1331

Section 1331(a) of Title 28 of the United States Code provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States, except that no such sum of value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

An action arises under the laws of the United States if the complaint seeks a remedy expressly granted by federal law or if it requires the construction of federal legal principles for its disposition. *Lindy v. Lynn*, 501 F.2d 1367 (3d Cir. 1974). There can be no question that an action under § 905(b) of the LHWCA meets all of these requirements. *Griffith v. Wheeling-Pittsburgh Steel Corp.*, 610 F.2d 116 (3d Cir. 1979); *Rich v. U.S. Lines*, 596 F.2d 541 (3d

Our interpretation of 28 U.S.C. § 1332 creates an inconsistency with the provision allowing removal to federal district court of suits against a foreign sovereign brought in state court. Section 1441(d) of Title 28 of the United States Code provides that a defendant foreign state may remove a case to a federal court where "the action shall be tried by the court without a jury . . ." Section 1441(d) specifically incorporates the definition of a foreign state set forth in § 1603(a) of the FSIA.

The constitutional issue may have to be directly faced in a removal case. *See Williams v. The Shipping Corporation of India*, 489 F.Supp. 526 (E.D.Va.1980). Also, the constitutional issue may possibly be faced in a suit directly against a foreign government that cannot be construed as being a "citizen or subject of a foreign state" within 28 U.S.C. § 1332 and does not come within any other jurisdictional statutes such as 28 U.S.C. § 1331 or § 1337. This does not completely abrogate the principle that I should not reach out to deal with that constitutional question in the context of this case. Indeed, the constitutional issue has different aspects in a case against a separate legal commercial entity than a case against a foreign government.

Cir. 1979); *Hurst v. Triad Shipping Co.*, 554 F.2d 1237 (3d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977); *McCarthy v. Silver Bulk Shipping Ltd.*, 487 F.Supp. 1021 (E.D.Pa.1980); *see City Stores Company v. Shull*, 161 F.Supp. 459 (D.Md. 1958) (jurisdiction exists under 28 U.S.C. § 1331 even in a case brought under the LHWCA as adopted in the District of Columbia because of the national policy and federal common law implicated).

What defendant wishes me to read into § 1330 from the legislative history is that § 1330 is the *sole* source of jurisdiction over a foreign sovereign. At first glance this is an attractive assumption.[9] However, the implications of such a reading are disturbing.

■ First, § 1330 does not on its face state that it is to be the exclusive source of federal jurisdiction in all suits against foreign sovereigns. Second, defendant's reading of § 1330 would mean that Congress revoked the right to a jury trial in a whole range of traditional cases at law without consideration of constitutional implica-

tions.[10] Third, defendants would have me hold that, *sub nom.*, Congress amended a whole range of jurisdictional statutes and case law on determining district court jurisdiction with § 1330. A district court would not only no longer have jurisdiction over a suit against a commercial corporation that happened to be owned fifty-one percent by a foreign state under 28 U.S.C. § 1332, but in addition there would be no jurisdiction in federal question cases (28 U.S.C. § 1331); civil rights actions (28 U.S.C. § 1343); or other actions relating to regulation of interstate commerce (28 U.S.C. § 1337), all of which traditionally are tried by a jury.[11]

■ I give strong credence to defendant's argument that the legislative history of the FSIA evidences an intent that cases against foreign sovereigns be tried on a nonjury basis. However, such an intent is not unequivocally represented in the statutory language. There was no expression of an intent to limit federal question jurisdiction. The legislative history also reveals that the jury trial issue was not a central

---

9. Others have reached this conclusion.

   Section 1330 confers original jurisdiction on the district court of 'any nonjury civil action' against a foreign state as defined in § 1603(a), without regard to the amount in controversy. A literal reading of this language would make actions for equitable relief cognizable under § 1330 independent of amount in controversy, and actions for money damages cognizable only under § 1331 when the amount in controversy exceeds $10,000. The legislative history makes it abundantly clear, however, that the words 'any nonjury action' were used to exclude a jury trial rather than describe a category of civil actions not triable to a jury. Further, the addition of § 1441(d) makes it plain that one assumption underlying the 1976 amendments was that in actions against a foreign sovereign there is no right to a jury trial under the Seventh Amendment. If this assumption is correct, then under Rule 38 and 39 such actions are nonjury actions, independent of the relief sought, except in cases in which trial by jury is provided for by statute. Of course it would be within the power of Congress to provide for a jury trial in original actions but not in removed actions, but the reason for such a distinction is obscure. Thus both the text and the legislative history lead to the conclusion that any action as to which the foreign state is not immune may

be brought in the district court, independent of the amount in controversy, and in no such action is there a right to jury trial.
   1 Moore's Federal Practice ¶ 0.66[4].

10. It is common to find an analysis of the constitutionality of new legislation prepared by the Congressional or Administration staff when the legislature recognizes a constitutional issue is created by that legislation. None appears in the House Report on FSIA. This is evidence that Congress was not focusing on the jury trial issue when the FSIA was drafted or considered. The only indication that it was considered are some citations to statutes involving nonjury trials against the United States. This issue will now be brought clearly to Congress's attention and it may take appropriate action to clarify the FSIA.

11. The Court of Appeals for the District of Columbia faced a similar question in *Trans-Bay Engineers v. Hills*, 551 F.2d 370 (D.C. Cir. 1976). There the court held that even though a jurisdictional statute existed which was normally relied on in suits such as the one before the court both to overcome the sovereign immunity of the United States and to establish jurisdiction, that other jurisdictional statutes could also be relied on, specifically 28 U.S.C. §§ 1332 and 1331.

focus of Congressional concern, but a tangential aspect of the FSIA. Given my respect for the sanctity of the right to a jury and the difficult issue of constitutional law presented if I do otherwise, I interpret my jurisdiction to extend to a jury trial in the instant case. Given the difficult and controlling issue of law in this case, I will be inclined, if asked, to certify this ruling for interlocutory appeal. *See* 28 U.S.C. § 1292(b). If I am incorrect, then empaneling a jury will be a waste of judicial resources. If I am correct, the law will be quickly clarified before cases tried nonjury over objections must be retried. I urge the court of appeals to accept interlocutory appeal in this case in recognition that other such cases are accruing on the docket of the district court, and a prompt resolution of the legal issue will avoid either a violation of constitutional rights or the waste of judicial resources in these cases. Both defendant and plaintiff urged the court to certify this decision for interlocutory appeal even prior to oral argument. Counsel are from firms specializing in admiralty and related litigation, and have informed the court that the issue under current concern is placing a

cloud on many cases in federal court. I have stayed the trial of similar cases on my docket pending resolution of this issue. This chambers has received direct inquiry from federal judges in several states regarding this case. Members of the bar had informed those judges of the extensive briefing and oral argument on this case and the intervention of the United States. Those judges await a definitive decision from a court of appeals, as do many of my colleagues in the Eastern District of Pennsylvania. I will grant a motion for certification of interlocutory appeal under 28 U.S.C. § 1292(b) as soon as a formal motion and order are presented on the record. I urge the court of appeals to grant the appeal. *See Zenith v. Matushita Electrical Industrial Co., Ltd.,* 478 F.Supp. 889 (E.D. Pa.1979).[12]

## VII. *CONCLUSION*

[12] I reject defendant's construction of § 1330 and find at least two jurisdictional bases for granting a jury trial in the instant case—28 U.S.C. § 1332 and 28 U.S.C. § 1331.[13] Therefore the motion to strike the jury trial demand will be denied.[14]

---

12. All counsel in this case have elucubrated in a most commendable fashion. Attorneys Charles Sovel and E. Alfred Smith and Mr. Rostau and Mr. Buck of the Department of Justice presented their arguments professionally, exhaustively and with extreme intellect and creativity. I commend all counsel for superior performances.

13. The policy implication of defendant's position is disturbing to the court, but I have not allowed these concerns to involve themselves in my judgment. These concerns are for Congress. It is not apparent that Congress fully considered the implications of the special status they grant the "corporate" arms of socialist governments and other government controlled foreign corporations in the FSIA if they intended to do as defendant asserts. American citizens have rights to a jury trial for torts and breaches of contract against a corporation until a foreign government takes it over. If a foreign company for any reason becomes subject to fifty-one percent ownership by a foreign government, and from that point on American citizens are deprived of their rights to a jury trial for a whole range of actions against that company. Yet all other foreign and domestic corporations must answer to a jury for their various frauds, torts, and breaches of contract.

14. My conclusion is that the jury trial issue was tangential to the main purpose running through the entire history of the Act—to give the federal courts the question of applying the doctrine of sovereign immunity and guidelines for that application. I could agree with defendant that Congress meant jurisdiction against a foreign sovereign to be based solely on § 1330. However, my belief that a strong argument can be made for plaintiff's right to a jury trial, and the rule of statutory construction directing me to avoid that constitutional issue if appropriate, would lead me not to strike the jury trial demand but dismiss for lack of jurisdiction. Since this is a "jury" civil action and not a "nonjury civil action" I have no jurisdiction. Plaintiff would be relegated to state court for a jury trial. Defendant could not remove the case to federal court because the law of the case would be that this court had no original jurisdiction. *See* 28 U.S.C. § 1441. This whole process leaves the determination of foreign sovereign immunity to state courts. This would abrogate the clear main policy of the FSIA in order to honor a tangential and arguable Congressional intent to deny a jury trial. I will not cut off *the FSIA's nose to spite its face.* Therefore, I reject this course of action.

We note that the detailed references to Chapter 97 in § 1330 might indicate that it was

intended to be the sole basis of jurisdiction in cases where foreign sovereigns are defendants. It is these inconsistencies in the FSIA which make this a difficult issue, and why I urge the court of appeals to accept interlocutory appeal.

The plaintiff has argued in the alternative that the term "nonjury civil action" in § 1330 be interpreted in light of the Supreme Court definition of nonjury actions in cases constru-ing the Seventh Amendment. Thus, I would read § 1330 to apply to actions sounding in equity or admiralty, or where a government agency seeks to enforce a public right. This does not appear to be the intent of the legislation, and I need not reach this issue since I find jurisdiction based on other sections of Title 28. *See* notes 1 and 3, *supra*.